**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALEXANDER SOWA, *et al.*, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and MERCEDES-BENZ GROUP AG,<br><br>Defendants. | Case No. 1:23-cv-00636-SEG |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................ 1
II. BACKGROUND ........................................................................ 2
A. Procedural History ........................................................................ 3
III. LEGAL STANDARD ........................................................................ 3
IV. ARGUMENT ........................................................................ 4
A. The Court previously held that Plaintiffs plausibly allege injury in fact and have standing to seek injunctive relief. ........................................ 4
B. Plaintiffs adequately plead overpayment injury under the Georgia Fair Business Practices Act ("Georgia FBPA"). ........................................ 6
C. Plaintiffs' allegations support injunctive relief. ........................................ 9
D. Plaintiffs adequately plead a breach of implied warranty claim under Florida law ........................................ 11
E. There is a new Georgia Plaintiff who satisfies privity for purposes of the Georgia breach of implied warranty claim. ........................................ 15
V. CONCLUSION ........................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amin v. Mercedes-Benz USA, LLC*,
301 F. Supp. 3d 1277 (N.D. Ga. 2018)....................4, 10

*Beeney v. FCA US LLC*,
2023 WL 6962116 (D. Del. Oct. 20, 2023)....................7, 8

*Campbell v. Beak*,
568 S.E.2d 801 (Ga. Ct. App. 2002)....................6

*Crown Ford, Inc. v. Crawford*,
473 S.E.2d 554 (Ga. Ct. App. 1996)....................6

*Feldman v. BRP U.S., Inc.*,
2018 WL 8300534 (S.D. Fla. Mar. 28, 2018) ....................12

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) ....................10

*Inkaholiks Luxury Tattoos Ga., LLC v. Parton*,
751 S.E.2d 561 (Ga. Ct. App. 2013)....................9

*Leon v. Cont'l AG*,
301 F. Supp. 3d 1203 (S.D. Fla. 2017)....................13

*Ludwig v. FCA US LLC*,
2025 WL 2400033 (D.N.J. Aug. 19, 2025) ....................11, 13

*McCabe v. Daimler AG*,
948 F. Supp. 2d 1347 (N.D. Ga. 2013)....................14

*McIntosh v. Samsung Electronics Co.*,
2021 WL 9595602 (N.D. Ga. Feb. 19, 2021)....................8

*In re MiMedx Grp., Inc. Sec. Litig.*,
2014 WL 6775316 (N.D. Ga. Dec. 2, 2014) ....................5

*Monilaw v. Mercedes Benz Grp. AG*,
2025 WL 2163761 (N.D. Ga. July 30, 2025) ....................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Nalley v. Gen. Motors LLC*,
2022 WL 18459646 (N.D. Ga. Aug. 30, 2022) .......... 7

*Norman v. Xytex Corp.*,
848 S.E.2d 835 (Ga. 2020) .......... 6

*O'Connor v. Ford Motor Co.*,
567 F. Supp. 3d 915 (N.D. Ill. 2021) .......... 12

*Ohio State Troopers Ass'n v. Point Blank Enters.*,
2018 WL 3109632 (S.D. Fla. Apr. 5, 2018) .......... 12

*Ollivierre v. Aspen Square Mgmt., Inc.*,
2024 WL 1560148 (N.D. Ga. Mar. 5, 2024) .......... 6

*Padilla v. Porsche Cars N. Am., Inc.*,
391 F. Supp. 3d 1108 (S.D. Fla. 2019) .......... 13

*Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*,
2016 WL 3390122 (S.D. Fla. June 17, 2016) .......... 12

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) .......... 3

*Rollolazo v. BMW of N. Am., LLC*,
2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) .......... 12

*Rose v. Ferrari N. Am., Inc.*,
2024 WL 1209185 (D.N.J. Mar. 20, 2024) .......... 10

*Sanchez-Knutson v. Ford Motor Co.*,
52 F. Supp. 3d 1223 (S.D. Fla. 2014) .......... 12, 14

*Shelor v. Jaguar Land Rover N. Am. LLC*,
2025 WL 1580834 (M.D. Fla. Jan. 31, 2025) .......... 14

*Sowa v. Mercedes-Benz Grp. AG*,
764 F. Supp. 3d 1233 (N.D. Ga. 2024) .......... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Terrill v. Electrolux Home Products, Inc.*,
753 F. Supp. 2d 1272 (S.D. Ga. 2010) ........................................................10, 11

*Toca v. Tutco, LLC*,
430 F. Supp. 3d 1313 (S.D. Fla. 2020) ..............................................................14

*Valiente v. Unilever United States, Inc.*,
2022 WL 18587887 (S.D. Fla. Dec. 8, 2022) ...............................................13, 14

*Weiss v. Gen. Motors LLC*,
418 F. Supp. 3d 1173 (S.D. Fla. 2019) ........................................................12, 13

**Statutes**

Ga. Code Ann. § 10-1-373(a) ..........................................................................9

**Court Rules**

Local Rule 7.2(E) ..........................................................................................5

# I. <u>INTRODUCTION</u>

Plaintiffs respectfully file this memorandum in opposition to the motion to dismiss certain claims in Plaintiffs' First Amended Consolidated Class Action Complaint ("FACCAC") filed by Defendants Mercedes-Benz USA, LLC and Mercedes-Benz Group AG (together, "Mercedes"). Mercedes' motion largely rehashes arguments they previously lost in the Court's December 31, 2024 Order Granting in Part and Denying in Part Motion to Dismiss ("MTD Order"), in which this Court held that Plaintiffs had standing to seek injunctive relief and plausibly alleged an injury in fact based on Mercedes' failure to properly address a serious, ongoing safety defect in its vehicles ("Rear Subframe Defect" or "Defect"). *See Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1252-55 (N.D. Ga. 2024). Mercedes now seeks to repackage those arguments as challenges to garden-variety statutory claims under Georgia law.

Mercedes also misses the mark with respect to the Florida implied warranty claim. Plaintiff Harris purchased directly from a Mercedes authorized dealership and was therefore a third-party beneficiary excepted from any privity requirement under Florida law.

Plaintiffs acknowledge that the breach of implied warranty claim under Georgia law brought by Plaintiffs New and Clay fails for lack of privity under the Court's MTD Order (they reasserted that claim to preserve it for appeal). However,

as detailed below, a new Plaintiff has stepped forward who purchased directly from an authorized Mercedes dealer and thus satisfies any privity requirement for purposes of that claim.

For these reasons, and as detailed below, Plaintiffs respectfully request that the Court deny Mercedes' motion to dismiss.

## II. BACKGROUND

This proposed class action addresses a serious safety defect in a large class of Mercedes vehicles. The rear subframe, which stabilizes the Class Vehicles and holds the rear suspension and rear wheels securely to them, FACCAC ¶¶ 348-355, is subject to catastrophic failure. Preliminary expert analysis reveals that the subframes prematurely corrode from the "inside out," *id*. ¶¶ 364, 441, a condition that arises due to MBG's failure to adequately design and manufacture the subframes. Critical components adjacent to the subframe can also prematurely corrode, including the brake lines, rear springs, gas lines, and rear axle, causing additional safety risks. *Id*. ¶ 362. Rather than act to remedy this Defect for all owners, Mercedes released an extended warranty (the "Limited Subframe Warranty") that provides assistance only to owners whose subframes are *already* near or past the point of catastrophic failure. *Id*. ¶¶ 411-421. The Limited Subframe Warranty does nothing to warn owners of the dangers of the Defect, provide inspections (particularly necessary to uncover "inside out" corrosion), or reimburse owners for the replacement of adjacent

corroded parts. *Id.* Adding insult to injury, Mercedes refuses to acknowledge the existence of the Defect, despite the aforementioned expert analysis, almost three years of litigation, and countless consumer complaints. *Id.* ¶¶ 385-389; 398-401.

### A. **Procedural History**

On December 31, 2024, the Court issued its MTD Order denying in part Mercedes' motions to dismiss. *See generally Sowa*, 764 F. Supp. 3d 1233. The Court denied Mercedes' ripeness challenge, found that Plaintiffs have standing to seek injunctive relief, and sustained a nationwide claim for fraudulent concealment under Georgia law, along with implied warranty claims under the laws of 12 states, and statutory consumer protection claims under the laws of 17 states. *Id.* at 1255-56, 1292. The Court dismissed Plaintiffs' Georgia statutory consumer protection claims and Florida implied warranty claims only on the grounds that there were no Plaintiffs who had purchased in those states. *Id.* at 1276, 1285 n.43, 1291.

Following entry of that Order, Plaintiffs moved to amend the complaint to add seven additional plaintiffs, four from new states, including Florida and Georgia. Dkt. 80 at 4-5. On September 26, 2025, the Court granted Plaintiffs' Motion for Leave to Amend and the First Amended Consolidated Class Action Complaint was entered. Dkts. 100, 101. This motion followed.

## III. **LEGAL STANDARD**

On a Rule 12(b)(6) motion, the court must construe the facts alleged in the

complaint in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012). A motion to dismiss for failure to state a claim must be denied so long as "the facts alleged . . . state a plausible claim for relief," such that the defendant has "fair notice of the plaintiff's claim and the grounds upon which it rests." *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1283 (N.D. Ga. 2018) (citation omitted). A "complaint may survive a motion to dismiss for failure to state a claim even if it is improbable that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely remote and unlikely." *Id.* (citation omitted).

## IV. ARGUMENT

### A. The Court previously held that Plaintiffs plausibly allege injury in fact and have standing to seek injunctive relief.

Mercedes' argument that "all Georgia Claims Fail," Dkt. 102, ("MTD Brief") at 4, because Georgia Plaintiffs have not yet shown their vehicles failed due to the Defect is a barely-disguised attempt to reargue the Court's holding in its MTD Order that there is no manifestation or failure requirement for Plaintiffs to have standing. That ruling was correct, and the Court should accordingly reject Mercedes' attempt to have the Court reconsider it.

In its MTD Order, the Court definitively ruled that Plaintiffs adequately pled an injury in fact that is not remedied by the Limited Subframe Warranty, and that their claims were therefore ripe, even in the event certain Class Vehicles had not yet

failed due to the Defect:

> Plaintiffs plausibly allege that the Extended Warranty will not address the Rear Subframe Defect in the absence of severe corrosion, does not sufficiently reimburse out-of-pocket expenses that Plaintiffs have already expended, and fails to cover their overpayment at the time of sale for the Class Vehicles.

*See Sowa*, 764 F. Supp. 3d at 1255.

In other words, Plaintiffs overpaid at the point of sale for cars that have a hidden defect, a harm that *already* occurred. Likewise, the Court ruled that Plaintiffs have standing to seek injunctive relief because "Defendants have not already provided the injunctive relief that Plaintiffs seek." *Id.* at 1253. Mercedes has not provided notice of the dangerous, hidden Rear Subframe Defect in the Class Vehicles or an inspection program. *Id.* Plaintiffs therefore showed "sufficient likelihood of future injury" and standing to seek injunctive relief. *Id.*

Mercedes in effect asks the Court to reconsider these previous rulings on justiciability under the guise of challenging specific statutory claims. Doing so amounts to an attempt to "repackage an argument already considered and rejected by this Court," which is "not proper." *See In re MiMedx Grp., Inc. Sec. Litig.*, 2014 WL 6775316, at *1-2 (N.D. Ga. Dec. 2, 2014) (declining to reconsider denial of motion to dismiss on previously asserted grounds). Moreover, Mercedes attempts an end-run around this Court's strict procedural requirements for motions for reconsideration, which are disfavored and required to be filed within 28 days after

the entry of an order. *See* Local Rule 7.2(E).

On this basis alone, Mercedes' motion should be denied, as nothing warrants revisiting the Court's prior rulings on injury and standing.

**B. <u>Plaintiffs adequately plead overpayment injury under the Georgia Fair Business Practices Act ("Georgia FBPA").</u>**

Setting aside the Court's previous ruling on ripeness, Plaintiffs New and Clay adequately plead the elements of a Georgia FBPA claim, including a cognizable injury. *See Ollivierre v. Aspen Square Mgmt., Inc.*, 2024 WL 1560148, at *7 (N.D. Ga. Mar. 5, 2024) (A Georgia FBPA claim "has three elements: a violation of the Act, causation, and injury." (citation omitted)). The Court already held that Plaintiffs' fraudulent omission claim under Georgia law is viable on behalf of *all* Plaintiffs, including those who have not yet experienced failure due to the Defect. *See Sowa*, 764 F. Supp. 3d at 1285. The elements of the Georgia FBPA are co-extensive with common law fraud, but the statute "eliminates two of the five required elements of fraud: scienter and intent to deceive." *Campbell v. Beak*, 568 S.E.2d 801, 807 (Ga. Ct. App. 2002). In other words, the Court's prior ruling that Plaintiffs adequately allege the common law claim necessarily encompasses their less demanding statutory one.

Courts have sustained Georgia FBPA claims where, as here, a plaintiff alleges benefit-of-the-bargain damages. *See, e.g.*, *Norman v. Xytex Corp.*, 848 S.E.2d 835, 843 (Ga. 2020) (sustaining Georgia FBPA claim against sperm bank and noting that

"at a minimum, [plaintiffs] may have paid more for Donor #9623's sperm than it was really worth"); *Crown Ford, Inc. v. Crawford*, 473 S.E.2d 554, 557 (Ga. Ct. App. 1996) (finding plaintiff alleged injury under the FBPA where dealer misrepresentation as to vehicle mileage resulted in plaintiff's overpayment).

Plaintiffs Clay and New both allege that had Mercedes not engaged in practices prohibited under the FBPA, they would have paid less for their vehicles or would not have purchased them in the first place. FACCAC ¶¶ 55, 61. These allegations are sufficient to state an injury under the Georgia FBPA. *See Nalley v. Gen. Motors LLC*, 2022 WL 18459646, at *7 (N.D. Ga. Aug. 30, 2022) (allegations that plaintiff "would not have purchased the vehicle (or would have paid less for it) had he known about the defect" sufficient to state a FBPA claim).

While Mercedes claims that "[m]anifestation of a defect is a necessary element of each claim asserted under Georgia law," MTD Brief at 4, that is not the law, and no case it cites stands for that proposition. Mercedes cites a single case applying the Georgia FBPA, *Beeney v. FCA US LLC,* in which the court found that allegations related to a "destination charge" did not adequately allege price inflation leading to actual injury. 2023 WL 6962116, at *6-8 (D. Del. Oct. 20, 2023). There, Plaintiffs alleged they were deceived when a "destination charge" added to the cost of a car turned out to be more than the actual cost of transporting vehicles to the dealership, and instead included a small additional profit margin. The Court ruled

that "no reasonable consumer would believe that the destination charges represented the actual cost of transporting the vehicles to the dealerships and included no manufacturer profit." *Id*. at *5.

*Beeney* does not stand for the proposition that Georgia law requires manifestation of a defect to sustain a Georgia FBPA claim. To the contrary, it suggests that overpayment is a valid form of injury under the Georgia FBPA *if the overpayment is properly pled*. The problem in *Beeney* is that it was not. The Court reasoned that the term "destination charge" would "not deceive a reasonable consumer into believing that the charge includes no profit," *id.* at *5, and accordingly "Plaintiffs have not alleged sufficient facts to show that a higher destination charge caused the Plaintiffs to pay more than they otherwise would have paid," *id*. at *7.[1]

Plaintiffs here, of course, allege just such price inflation: a car with a defect is

[1] Mercedes also cites *McIntosh v. Samsung Electronics Co.*, 2021 WL 9595602, at *11 (N.D. Ga. Feb. 19, 2021), for the proposition that a "breach of implied warranty under Georgia law requires the 'injury was caused by the defective goods.'" MTD Brief at 4. But nothing in *McIntosh* stands for the proposition that Georgia law does not recognize the cognizability of pre-failure defects under implied warranty theories or otherwise. In *McIntosh*—a personal injury case where plaintiff failed to participate in discovery or proffer any evidence that the cell phone at issue actually overheated and injured her, or to even oppose summary judgment—the court held the plaintiff failed to adequately show any injury on those facts. The case *did not* address the question of whether an implied warranty claim may lie on the basis of a defect that has not yet caused a product to fail, a question this Court already answered in its MTD Order. In any event, as explained below Plaintiffs acknowledge their breach of implied warranty claim under Georgia law fails under the Court's MTD Order. But Plaintiffs do not agree that manifestation is required for any of the Georgia claims including implied warranty.

worth less than a car without one at the point of purchase. *See Sowa*, 764 F. Supp. 3d at 1284 ("Plaintiffs allege that [they] 'would not have purchased Class Vehicles, or would have paid less for them' had they known about the alleged defect. . . . These allegations are sufficient to demonstrate Plaintiffs' justifiable reliance on the alleged fraudulent omissions."). Plaintiffs adequately allege overpayment injury.

### C. <u>Plaintiffs' allegations support injunctive relief.</u>

Again even setting aside the Court's ruling in its MTD Order on Plaintiffs' standing to seek injunctive relief, Plaintiffs' allegations support their claims for injunctive relief under both the Georgia FBPA and UDTPA. *See Inkaholiks Luxury Tattoos Ga., LLC v. Parton*, 751 S.E.2d 561, 563 (Ga. Ct. App. 2013) (noting that the Georgia FBPA provides for both damages and injunctive relief); Ga. Code Ann. § 10-1-373(a) (establishing availability of injunctive relief under the Georgia UDTPA). Plaintiffs allege that the Limited Subframe Warranty fails to cure the Defect because it does not provide adequate notice of the Defect to owners, does not provide for inspections, and only covers repairs of the rear subframe itself, neglecting the surrounding components that are also subject to dangerous, severe corrosion. *See* FACCAC ¶¶ 419-421. The subframes corrode from the inside out, and an inspection program Mercedes (still) refuses to provide will be the only way to identify failing subframes and prevent catastrophic failures.

As this Court previously found, these allegations are adequate to show a high

likelihood of future harm to Class Members as a result of the Defect, even absent failures caused by the Defect. *See Sowa*, 764 F. Supp. 3d at 1252-53[2]; *see also, e.g.*, *Rose v. Ferrari N. Am., Inc.*, 2024 WL 1209185, at *7 (D.N.J. Mar. 20, 2024) (sustaining Georgia UDTPA claims against an automaker where a purported fix "fails to repair the Defect"); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 645 (E.D. Mich. 2019) (noting that manufacturer's failure to fully cure a defect along with representations that the defect has been fixed support Georgia UDTPA claim); *Amin*, 301 F. Supp. 3d at 1294-95 (allegations of future harm supported by vehicle manufacturer's ongoing denial of defect's existence and provision of ineffective fixes).

Moreover, allegations that a defect will manifest or become worse in the future are sufficient to establish standing to seek injunctive relief. *See Monilaw v. Mercedes Benz Grp. AG*, 2025 WL 2163761, at *4 (N.D. Ga. July 30, 2025) (finding that allegations that wood trim would manifest cracking defect in the future are sufficient to seek injunctive relief and collecting cases). As the court put it in

---

[2] As the Court put it, "Moreover, because subframe corrosion is so difficult to detect until it is near the point of failure, Class Vehicle owners are unlikely to apprehend the safety risk until Defendants provide notice of the Rear Subframe Defect. . . . Accepted as true, the allegations in the CAC indicate that consumers may suffer actual physical harm if they are not provided notice of the Rear Subframe Defect in their vehicles. Such physical harm constitutes irreparable injury." *Sowa*, 764 F. Supp. 3d at 1253 (internal quotation omitted).

*Monilaw* while collecting cases, allegations that a defect will cause harm in the future represent "allegations . . . [of] continuing, present adverse effects from the Defendants' past conduct" sufficient to confer "standing for equitable relief." *Id.* (citation omitted).

Mercedes cites *Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272 (S.D. Ga. 2010) for the proposition that injunctive relief is unavailable absent manifestation of harm. But that is not what *Terrill* holds. There, plaintiffs claimed they were injured by false advertising of faulty washing machines, and they sought an injunction targeted at defendant Electrolux's *advertising* campaigns. The court reasoned that the plaintiffs did not allege the advertising campaigns will "damage[] [plaintiffs] in the future . . . much less allege *how* they will be damaged." *Id.* at 1291. The difference here is stark, and dispositive: the injunctive relief Plaintiffs seek is not related to *advertising* practices, it is an injunction that would force Mercedes to take action to identify failing subframes and prevent future vehicle failures due to a dangerous safety defect.

### D. **<u>Plaintiffs adequately plead a breach of implied warranty claim under Florida law.</u>**

Florida courts recognize a third-party beneficiary exception to privity "where the plaintiff purchased a vehicle from an authorized dealer who was an agent of the manufacturer, the plaintiff was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the

consumer, not the dealership." *Ludwig v. FCA US LLC*, 2025 WL 2400033, at *12 (D.N.J. Aug. 19, 2025) (citations omitted). That is exactly the situation here: Plaintiff Harris purchased her vehicle from an authorized dealer who was an agent of the manufacturer. FACCAC ¶ 40.

Courts regularly hold that a third-party beneficiary exception applies in such circumstances. *See, e.g.*, *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) (finding plaintiff's allegations were sufficient to show he was third-party beneficiary of contract between dealer and manufacturer); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014) ("Plaintiff can pursue a claim of breach of implied warranty through third-party beneficiary law."); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *14 (C.D. Cal. Feb. 3, 2017) (same).[3] This line of cases exists for good reason: without a third-party beneficiary exception that applies to vehicle purchasers, "a manufacturer would always be able to shield itself from implied warranty claims even though it knows that its intended consumer is not the dealership." *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 943 (N.D. Ill. 2021) (finding third-party beneficiary exception to

[3] *Cf. Ohio State Troopers Ass'n v. Point Blank Enters.*, 2018 WL 3109632, at *7 (S.D. Fla. Apr. 5, 2018) (finding third-party beneficiary exception applied to purchasers of bullet-proof vests); *Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*, 2016 WL 3390122, at *5 (S.D. Fla. June 17, 2016) (same as to purchasers of defective aircraft components); *Feldman v. BRP U.S., Inc.*, 2018 WL 8300534, at *8 (S.D. Fla. Mar. 28, 2018) (same as to purchaser of defective personal watercraft).

privity applied under Florida law) (citation omitted).

The Court's MTD Order supports the finding of a third-party beneficiary exception to privity under Plaintiff Harris's facts. The Court held that Plaintiffs sufficiently alleged "the existence of an agency relationship between Mercedes and its dealers." *See Sowa*, 764 F. Supp. 3d at 1272-73. Moreover, the Court analyzed Plaintiff Ortiz's claims under New York law, which contains a similar exception to privity for implied warranty claims, and found the third-party beneficiary exception adequately pled. *Id*. at 1271-72. Here, too, Plaintiff Harris alleges that she purchased her vehicle directly from an authorized dealership that was an agent of MBUSA, the vehicle's warrantor.[4] FACCAC ¶ 40. Those warranties, whether express or implied, were intended to benefit only Plaintiff Harris as the end consumer, not the dealership. *Weiss*, 418 F. Supp. 3d at 1183 (recognizing that vehicle manufacturer's "warranties are intended for consumers" despite plaintiff's purchase through dealership). Plaintiff Harris was therefore a third-party beneficiary for purposes of an implied warranty claim against MBUSA.

Several of the cases Mercedes cites for the proposition that there is no third-

[4] The cases cited by Mercedes addressing "conclusory" allegations of third-party beneficiary status did not contain the detailed allegations present here. *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017) ("Plaintiffs offer no facts about the persons or entities from whom they obtained their Mercedes Benz vehicles . . . ."); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1119 (S.D. Fla. 2019) (noting that plaintiffs purchased their vehicles from used car dealerships rather than "directly from Porsche").

party beneficiary exception under Florida law say the opposite.[5] For instance, in *Toca v. Tutco, LLC*, the court noted that agency and third-party beneficiary exceptions are "two recognized *exceptions* to the bright-line privity rule under Florida case law." *See* 430 F. Supp. 3d 1313, 1325–26 (S.D. Fla. 2020). The Court in *Shelor v. Jaguar Land Rover N. Am. LLC* recognized that there is a third-party beneficiary exception to privity in Florida law and that "[i]f ordinary privity is lacking, privity may be established through agency." *See* 2025 WL 1580834, at *25 (M.D. Fla. Jan. 31, 2025).[6] While the courts in both cases declined to find that the plaintiff adequately alleged an exception to privity under the specific facts of those cases, they found that such exceptions generally exist under Florida law.

---

[5] While *Valiente v. Unilever United States, Inc.*, 2022 WL 18587887 (S.D. Fla. Dec. 8, 2022), a case involving the sale of antiperspirant, found no third-party beneficiary exception under Florida law, courts have declined to apply that ruling in the context of vehicle defect cases. *See, e.g.*, *Ludwig*, 2025 WL 2400033, at *12 (declining to apply *Valiente* and finding "decisions in the motor vehicle context more instructive" as to the existence of a third-party beneficiary exception to privity). In *McCabe v. Daimler AG*, plaintiffs failed to properly oppose defendant's motion, citing "no authority" for a third-party beneficiary exception to privity. *See* 948 F. Supp. 2d 1347, 1362 (N.D. Ga. 2013). As discussed above, such authority is plentiful.

[6] To the extent that the court in *Shelor* rejected the application of a third-party beneficiary exception in the dealership context, Plaintiffs respectfully suggest that the *Shelor* court had an overly narrow view of the exception. In the context of claims regarding vehicles sales through authorized dealerships, the line of cases beginning with *Sanchez-Knutson* is most appropriately followed. *See* 52 F. Supp. 3d at 1233–34.

### E. **There is a new Georgia Plaintiff who satisfies privity for purposes of the Georgia breach of implied warranty claim.**

Plaintiffs acknowledge that Georgia Plaintiffs New and Clay did not purchase from an authorized Mercedes dealership and under the Court's MTD Order lack privity with Mercedes for a Georgia breach of implied warranty claim.[7] They asserted those claims here solely to preserve that issue for appeal. Now, however, a new Plaintiff—Christos Hines—has stepped forward to assert that claim on behalf of the proposed class.[8] As detailed in the [Proposed] Second Amended Consolidated Class Action Complaint ("SACCAC") submitted as Ex. A herewith, Mr. Hines purchased a Class Vehicle directly from an authorized dealer in Georgia, and thus satisfies privity under the MTD Order. SACCAC ¶¶64-66. Plaintiffs respectfully request that the Court grant them leave to amend.[9] As reflected in the redline submitted as Ex. B, Mr. Hines' addition is the only change from the FACCAC.[10]

## V. **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny Mercedes' motion to dismiss.

---

[7] Plantiff New's and Plaintiff Clay's other claims are unaffected by this issue.
[8] Mr. Hines only came to counsel's attention—and retained them—this week.
[9] If the Court grants Plaintiffs' request to amend the complaint, Plaintiffs will file a clean version of the SACCAC on the docket with its accompanying exhibits.
[10] As this Court noted in its Order on Motion for Leave to Amend (Dkt. 100), "[a]t least one court has suggested that 'Eleventh Circuit precedent favors allowing new and proper class representatives to enter a case to ensure the putative class members' interests are protected'" (internal citation omitted)).

Dated: October 24, 2025

Respectfully submitted,

/s/ *Jonathan D. Selbin*
Jonathan D. Selbin (pro hac vice)
Kenneth Byrd (pro hac vice)
Muriel Kenfield-Kelleher (pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, Eighth Floor
New York, New York 10013
Telephone: 212-355-9500
jselbin@lchb.com
kbyrd@lchb.com
mkenfieldkelleher@lchb.com

*Plaintiffs' Interim Class Counsel*

/s/ *Adam J. Levitt*
Adam J. Levitt (pro hac vice)
John E. Tangren (pro hac vice)
Daniel R. Ferri (pro hac vice)
Daniel R. Schwartz (pro hac vice)
Elijah G. Savage (pro hac vice)
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com
dschwartz@dicellolevitt.com
esavage@dicellolevitt.com

*Plaintiffs' Interim Class Counsel*

/s/ *Ketan A. Patel*
Ketan A. Patel (Ga. Bar No. 121099)
**CORPUS LAW PATEL, LLC**
P.O. Box 724713
Atlanta, Georgia 31139
Telephone: 678-597-8020
kp@corpus-law.com

*Plaintiffs' Interim Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

*<u>/s/ Muriel Kenfield-Kelleher</u>*
Muriel Kenfield-Kelleher

## **CERTIFICATE OF COMPLIANCE**

In compliance with Local Rule 7.1(D), I certify that this brief has been prepared pursuant to the requirements of Local Rule 5.1(C) and (D). Specifically, the text is double-spaced, the font is Times New Roman in 14-point size, and margins are one inch.

*/s/ Muriel Kenfield-Kelleher*
Muriel Kenfield-Kelleher