**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALEXANDER SOWA, *et al.*, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and MERCEDES-BENZ GROUP AG,<br><br>Defendants. | Case No. 1:23-cv-00636-SEG<br><br>**ORDER FOR DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

Plaintiffs and Defendants Mercedes-Benz USA, LLC and Mercedes-Benz Group AG (collectively, the "Parties"), by and through their respective counsel, and pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, hereby agree to the terms of this Stipulation and Order for Discovery of Documents and Electronically Stored Information ("ESI Order").

## I. PURPOSE

This ESI Order will govern the discovery and use of electronically stored information ("ESI") and Hard Copy Documents (as defined below) in the above-captioned litigation and will complement and supplement the Federal Rules of Civil Procedure ("Federal Rules") governing discovery. Any disclosures made pursuant to this ESI Order are subject to any Orders entered in this action. This Protocol does

not alter the Parties' discovery obligations or protections under the Federal Rules or any Local Rules of this U.S. District Court ("Local Rules"), as applicable. Nothing in this ESI Order shall preclude a Producing Party from performing a responsiveness or privilege review to determine if documents captured by search terms are in fact responsive to the receiving party's request and discoverable.

Further, nothing in this order prohibits a Party from moving the Court to modify the terms herein.

## II. LIMITATIONS AND NON-WAIVER

By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, neither the party producing documents (the "Producing Party") nor the party receiving documents (the "Receiving Party") waives any objections to producing any particular document or category of documents on any grounds whatsoever.

## III. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the Action consistent with the Federal Rules and this Court's Standing Order Regarding Civil Litigation. The Parties will meet and confer within a reasonable time to resolve disputes arising under this ESI Order.

## IV. DEFINITIONS

a. "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

b. "Confidentiality Designation" means the designation of "Confidential" or "Attorneys' Eyes Only" stamped on Discovery Material as defined by, and subject to, the terms of the Parties' Stipulated Protective Order.

c. "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

d. "Hard-Copy Document" means Documents existing in paper form at the time of collection.

e. "Native" or "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

f. "Metadata" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in "The Sedona Conference Glossary: EDiscovery and Digital Information Management," Fifth Ed., February 2020.

g. “Party” means Plaintiffs or Defendants in this Litigation.

h. “Requesting Party” means the Party requesting production of documents.

i. “Receiving Party” means a party receiving a production of documents.

j. “Producing Party” means the Party that may be producing documents in response to the request of Requesting Party.

k. To the extent a technical term is not defined herein, the parties may look to the “The Sedona Conference Glossary: E-Discovery and Digital Information Management,” Fifth Ed., February 2020, for guidance relating to the definition of those terms.

## V. PRESERVATION

To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a. The Parties will meet and confer regarding any data sources that a Producing Party asserts are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B); and

b. The Parties agree that the following sources need not be preserved: random access memory (RAM) or other ephemeral data, on-line access data such as temporary Internet files, histories, caches, cookies, etc., data in Metadata fields that are frequently updated automatically (e.g., last-opened dates); and "deleted," "slack," "fragmented," or "unallocated" data on hard drives.

## VI. SEARCH AND REVIEW

The Parties recognize that there exist a variety of search tools and methodologies, including but not limited to the use of search terms and technology assisted review ("TAR") tools. The Parties agree to meet and confer and will cooperate in good faith regarding a search methodology. The parties will disclose any search methodology used for culling purposes, and the parameters of that search methodology, including all search terms, custodians, and date ranges used, along with any technical limitations of any tool used. Should a party wish to use TAR to exclude documents from its review, the party intending to use TAR will disclose its intended methodology, including the methodology to be used for validation, and the Parties will meet and confer to resolve any disputes relating to the use of TAR. If a party wishes to use search terms, the Parties will cooperate in good faith to conduct a search term meet and confer process as prescribed below:

a. *Producing Party Initial Search Terms.* The Producing Party shall share a list of proposed search terms within 15 calendar days after its service of responses and objections to any set(s) of requests for production.

b. *Requesting Party Initial Search Term Response.* The Receiving Party shall provide any revisions or additions to the Producing Party's proposed search terms, if any, within a reasonable time following receipt of the proposed search terms from the Producing Party.

c. *Further Search Term Negotiations.* If applicable, the Producing Party will identify which of the Receiving Party's proposed search terms the Producing Party will agree to use, and if certain terms are not acceptable, will propose alternative terms as needed. The Producing Party will provide a Search Terms Hit Report ("STHR Report") (as described in Section VI.f. below) to support any burden argument or to show that the search has produced an unproportional and unreasonably large number of documents. Upon request, the Producing Party shall confer with the Requesting Party concerning the Producing Party's reasoning behind why particular search terms are not acceptable and confer regarding possible alternative search terms.

d. *Foreign Language Search Terms*. The Producing Party shall take reasonable steps to confirm if a custodian or noncustodial data source(s) that is to be subjected to search terms to identify potentially relevant documents will

need to be searched in any language other than English. The Producing Party will disclose which custodians and noncustodial data sources are likely to contain such files and the at-issue foreign language(s). The Producing Party will run searches on such custodial and noncustodial data sources using English language terms and the relevant foreign language(s).

e. *Recourse for Failure to Agree on Search Terms.* If the Parties fail to reach an agreement regarding search terms within 60 days of receipt of document requests, and to extent that there are any disagreements regarding search methodology that the Parties were unable to resolve, the Parties may bring those matters to this Court's attention (or, to the extent applicable, the Special Master). If certain search terms are agreed upon, whereas others remain in dispute, the producing party shall not delay the process of review and potential production of the documents returned by the agreed upon search terms.

f. *Search Terms Hit Report*. A STHR Report will be provided in Excel (or other format as agreed to by the producing and receiving Parties). The STHR Report will include: (a) number of documents hit by the search term with separate hits for individual documents hit vs. documents hit including families, (b) unique documents hit by each search term, and (c) the total number of documents hit with and without families.

g. *Random Sample*. Only if the Parties dispute the burden of a particular search term during the process of meeting and conferring regarding search terms, the Receiving Party may request that the Producing Party provide additional information relating to the accuracy of the proposed search methodology. The Parties will meet and confer regarding the need to conduct a Random Sample review and the scope of that review and any related disclosures. However, the Producing Party shall not be required to disclose irrelevant documents that were encountered during the course of the random sample review. To the extent the Parties are unable to reach an agreement, the Parties shall submit such issues for resolution by the Court or its designee.

h. *Previously used search terms.* The Parties acknowledge that in certain instances, search terms and/or search methodologies/parameters (e.g., date ranges, custodians, sources, etc.) may have already been applied for purposes of preservation, collection, and/or productions to others for other purposes (e.g., regulatory inquiry or investigation, merger negotiations, etc.). If the Parties intend to rely on previously used terms as a screen, they will disclose the search terms and/or search methodologies/parameters used and for what purpose, e.g., as negotiated with the Federal Trade Commission. The Parties agree:

i. to meet and confer to determine the extent to which any previously used search terms and methodologies/parameters require modification; and

ii. the Parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

## VII. DISCLOSURES OF CUSTODIAL AND NON-CUSTODIAL SOURCES

Any Party served with discovery shall disclose its custodial and non-custodial sources of potentially relevant data within 15 days after service of its responses and objections to a discovery request. The custodian information disclosure shall include job title or position. The non-custodial source information disclosure shall include system name. The Parties may meet and confer to discuss the custodial or non-custodial sources and to try to agree on reasonable scope of discovery.

## VIII. USE OF SEARCH TERMS NOT TO PRECLUDE PRODUCTION OF KNOWN RESPONSIVE DOCUMENTS

Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable and

good faith search and produce all relevant and responsive documents of which a party is aware, regardless of whether they contain search terms or some other search methodology agreed to by the Parties or ordered by the Court. Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the Parties' conferral, and search terms or other search methodology agreed to do not supplant discovery requests. Although this ESI Order acknowledges the use of search terms may result in culling potentially responsive information, where a Party knows or reasonably should know that information is relevant and responsive to a document request, it shall not withhold that document from production on the basis that it does not contain an agreed search term or otherwise fall into other agreed upon search parameters.

To the extent that a party is aware of non-duplicative documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or some other search methodology agreed to by the Parties or ordered by the Court.

If a party knows that the use of a particular search methodology or technology will be ineffective based on the text or format of particular documents (because, for example, the document has light text and OCR is ineffective), those documents must be reviewed by other means.

## IX. PRODUCTION FORMATS

With the exception of spreadsheets, presentation files, multi-media files and other Native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excluded below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the Native or original file.

a. *Production media.* The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (e.g., FTP), or readily accessible computer or electronic media (e.g., CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any produced Native files. The Producing

Party shall identify: (i) the Responding Party's name; (ii) the production date; and (iii) the Bates Number range of the materials contained on the Production Media.

b. *Color*. The Parties shall produce documents in color where color is reasonably helpful to understanding or viewing the document (e.g., charts and graphics, tracked changes, and highlights). If a receiving party finds the black and white version of a document insufficient, the receiving party may request that the Producing Party provide a color image or Native file of such document. The Producing Party will not unreasonably deny a request to provide a color image and shall reproduce the document(s) in color, if reasonably accessible, within a reasonable time from receiving the request. Color images should be produced as single page JPG files at 300dpi with JPG compression and a high-quality setting so as to not degrade the original image.

c. *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (e.g., ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document.

d. *Parent-child relationships*. Parent-child relationships (association between an attachment and its parent document) shall be preserved. A party is not required to generate information to reconstruct any family groups to the extent such information is not present at the time of collection. The

attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

e. *Hyperlinked Documents and Modern Attachments*. The Parties will make reasonable and proportional efforts to preserve and search for relevant information across modern, hyperlinked attachments within its M365 environment. In no event shall a party be required to purchase additional software or functionality in order to satisfy this provision. Producing Party shall undertake reasonable efforts to produce such hyperlinked attachments, and/or identify why the search for and production of such links is neither relevant and/or proportional to the claims and defenses or, alternatively, that such links are not reasonable accessible. Upon reasonable request by the Receiving Party, the Producing Party shall undertake reasonable and proportional efforts to produce documents hyperlinked within the Producing Party's production that were not previously produced within the Producing Party's production, provided that (i) such documents are responsive to the Requesting Party's document requests and/or relevant and proportional to the claims and defenses, (ii) are within the Producing Party's possession, custody, or control, and (iii) the production of such hyperlinked documents is not unduly burdensome and will not require the purchase of

additional software or functionality to effectuate production. A producing party shall have no obligation to search for or produce hyperlinked documents that reside outside of its M365 environment. A reasonable request for hyperlinks should include a list of hyperlinks and corresponding Bates numbers of the produced document containing the hyperlink. The Parties acknowledge that the current version of the hyperlinked document may differ from the version of the document at the time the hyperlink was sent. The Parties also acknowledge that the Metadata for producing hyperlinked documents under this section may not reflect the Metadata for requested documents at the time the documents were hyperlinked. The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents.

f. *Redactions*. ESI may be redacted to protect privileged or attorney work product information. If the Parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that the Parties have agreed to produce in Native Format need to be redacted, the Parties agree to meet and confer in good faith on how best to produce the documents so that proper formatting and usability are maintained. If a document is redacted, the full text should be replaced with OCR text that excludes the redacted material. No redactions for relevance or responsiveness may

be made within a produced document or ESI item unless there is a prior agreement from the Receiving Party or an order of the Court.

g. *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate Confidentiality Designations in accordance with the Protective Order to be entered in this matter. Each responsive document produced in Native Format will have its Confidentiality Designation indicated on its corresponding TIFF placeholder. The Confidentiality Designation shall also be reflected in the Confidentiality field specified in **Exhibit A.**

h. *Metadata fields*. To the extent reasonably possible, the Parties shall provide the system-generated and Metadata fields (the "Production Fields") as set forth in **Exhibit A**. If the Producing Party believes the Production Fields are not reasonably possible to produce, the Producing Party shall notify the requesting party after learning such information.

i. *Custodian or originating source*. The custodian or originating source shall be identified in the Custodian field of the database load files, as provided in **Exhibit A**. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive, etc.) shall be produced in such a

fashion as to identify the department, group, entity, or facility. A Producing Party shall use a uniform description of a particular custodian across productions.

j. *Native Format*. The Responding Party shall produce spreadsheets (e.g., Excel), presentation files (e.g., PowerPoint), and any other materials not readily convertible to TIFF format (e.g. three-dimensional design files) in Native Format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in Native Format. If a Native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file, but if a Producing Party becomes aware that it is not possible or practicable to display such information in the image file, a Native file will be produced. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable Metadata fields set forth in Exhibit A. For each Native file produced, the production will include a *.tiff image slipsheet indicating the production number of the Native file and the Confidentiality Designation and stating, "File Provided Natively" or similar language. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in Native Format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably

denied. The Parties agree to meet and confer regarding a protocol for use of Native files at depositions, hearings, or trial.

k. *Text files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of documents originating in Native Format should be extracted directly from the Native file and each text file will be named using its corresponding beginning bates number (e.g., ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, Hard-Copy Documents with redactions.

l. *Hard-Copy Documents*. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Hard-Copy Documents. To the extent reasonably possible, the Parties shall convert and produce documents that exist solely in physical hard-copy format following this ESI Protocol. If the Producing Party determines that it is not reasonably possible, the Producing Party shall notify the requesting party. The Metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The ".tiff" files shall be subject

to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

m. *Databases and other structured data*. The Parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management system (e.g., Oracle, SQL server, DB2), including the types of information stored in the database(s), the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in Native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. Subject to reasonable requests by the receiving party, the Producing Party shall provide a description of each field produced, as well as codes, values and abbreviations used to populate a data field, and other information necessary for the requesting party to understand the nature and function of the structured data source and the meaning of structured data produced.

n. *Password protected files*. The Producing Party shall produce decrypted versions for any password-protected files to the extent the passwords are reasonably available.

o. *Embedded documents*. Embedded ESI documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in **Exhibit A.** Related embedded documents will be produced within a continuous Bates range. The Parties agree that certain embedded documents—such as embedded logos, signatures, OLEObjects, images or pictures, and systems and/or container files (e.g., OLE2, .bin, and similar files that hold embedded files but which do not contain user data)—need not be extracted.

p. *Compressed files*. Compression file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall be decompressed to ensure that a compressed file within a compressed file are decompressed into the lowest possible compression resulting in individual folders and/or files.

q. *Duplicates*. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple custodians. To the extent there are duplicate documents, the Responding Party need only produce a

single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the DUPLICATECUSTODIAN field should list each custodian separated by a semicolon. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the Producing Party should provide an overlay file along with or within a reasonable time after each production.

r. *Email threading*. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message ("Last In Time Email"). The Party need not produce earlier, less inclusive email messages or "thread members" that are fully contained (including attachments and emails with identical senders and recipients) within the Last In Time Email. Only email messages with a parent document that serves as the Last In Time Email and which contains all relevant attachments within the email chain will be considered less inclusive email messages that need not be produced. Producing Parties who elect to produce only the Last In Time Email agree to

provide copies of specific less inclusive emails upon a reasonable request by a Receiving Party for use during depositions.

s. *Message, chat and collaboration software*. The Parties agree that message, chat and collaboration software ESI (e.g., Microsoft Teams, Onedrive, Slack, Facebook Messenger, Signal, or WhatsApp) may be discoverable subject to FRCP 26(b) if its discovery is proportional and relevant to either party's claims or defenses in this dispute. The Parties further agree that the most efficient and cost-effective methods for collecting and producing such ESI may depend on the specific collaboration software or text messaging platform in use. In the case of chat messages generated from the use of chat or messaging platforms, the Parties agree that it may be necessary to produce relevant messages with the context of prior-in-time and subsequent in-time chat messages. The Parties will meet and confer to discuss the methods to collect message or chat ESI, and the Parties agree to meet and confer regarding the processing and production format for relevant communications in collaboration software prior to any production of chat messages.

## X. MODIFICATION

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**SO ORDERED** this 5th day of November, 2025.

SARAH E. GERAGHTY
United States District Judge

# EXHIBIT A

## Production Fields

1. The load files accompanying scanned paper documents will include the following objective coding fields, to the extent reasonably applicable:

| Field | Field Description |
|---|---|
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2. The following Metadata fields shall be included in Load files accompanying ESI, to the extent reasonably available, and/or unredacted:

| **Field** | **Field Description for Electronic Documents** | **Field Description for Emails** | **Field Description for Calendar Entries** |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a document family | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |
| CUSTODIAN | The custodian of the document produced. | The custodian of the document produced. | The custodian of the document produced. |

| **Field** | **Field Description for Electronic Documents** | **Field Description for Emails** | **Field Description for Calendar Entries** |
|---|---|---|---|
| CUSTODIAN DIRECTORY | The folder path to the original folder where the Custodian identified in the Custodian field stored the document. | The folder where the Custodian identified in the Custodian field stored the email/document. | The folder where the Custodian identified in the Custodian field stored the calendar entry/document. |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| DUPLICATE CUSTODIAN | All agreed-upon custodians of the document only if a Producing Party elects to de-duplicate across custodians. There shall be a semicolon between each agreed-upon custodian identified. To the extent the Producing Party intends to remove a custodian, whether agreed upon or otherwise, from the Metadata being produced, they shall notify receiving party. | All agreed-upon custodians of the document only if a Producing Party elects to de-duplicate across custodians. There shall be a semicolon between each agreed-upon custodian identified. To the extent the Producing Party intends to remove a custodian, whether agreed upon or otherwise, from the Metadata being produced, they shall notify receiving party. | All agreed-upon custodians of the document only if a Producing Party elects to de-duplicate across custodians. There shall be a semicolon between each agreed-upon custodian identified. To the extent the Producing Party intends to remove a custodian, whether agreed upon or otherwise, from the Metadata being produced, they shall notify receiving party. |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| CUSTODIANOTHERDIRECTORY[1] | The directory structure or path where the original file was stored on the computer for the custodians identified in the DuplicateCustodian Metadata field. | The email folder where the original email was stored on the computer for the custodians identified in the DuplicateCustodian Metadata field. | The folder where the original calendar entry was stored on the computer for the custodians identified in the DuplicateCustodian Metadata field. |
| CONFIDENTIAL | Confidentiality designation | Confidentiality designation | Confidentiality designation |
| REDACTED | Whether document is redacted | Whether document is redacted | Whether document is redacted |
| AUTHOR | Document author from Metadata | | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |

[1] This field need only be populated for items which are emails, word processing documents, presentation files, or spreadsheets where doing so would not be unduly burdensome.

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATETIME | | MBUSA will provide the sent date and time of the message in the format MM/DD/YYYY HH:mm:ss; MBG will use the European format DD/MM/YYYY HH:mm:ss. | Date and time calendar invite sent (if any) |

| **Field** | **Field Description for Electronic Documents** | **Field Description for Emails** | **Field Description for Calendar Entries** |
|---|---|---|---|
| RECEIVEDDATE TIME | | MBUSA will provide the received date and time of the message in the format MM/DD/YYYY HH:mm:ss; MBG will use the European format DD/MM/YYYY HH:mm:ss. | Received date and time of the calendar invite (if any) |
| FILENAME | Contents of this Metadata field, or an equivalent. Should be the original name of the file. | Contents of this Metadata field, or an equivalent | Contents of this Metadata field, or an equivalent |
| FILEEXTEN | File extension | File extension | File extension |
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| HasHiddenContent | Y if the document contains hidden content[2], otherwise N or empty | Y if the document contains hidden content, otherwise N or empty | Y if the document contains hidden content, otherwise N or empty |
| Production Volume | Production volume name, including the volume number and prefix | Production volume name, including the volume number and prefix | Production volume name, including the volume number and prefix |
| NATIVELINK (DPF) | Link to Native file (if any) | Link to Native file (if any) | Link to Native file (if any) |
| TEXTLINK (DPF) | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |

[2] "Hidden Content" for purposes of this field shall include track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| ConversationIndex | | Unique alphanumeric identifier for an email conversation, which may be populated by the e-mail client for each outgoing message. | |