# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ALEXANDER SOWA, *et al.*, individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>MERCEDES-BENZ USA, LLC and MERCEDES-BENZ GROUP AG f/k/a DAIMLER AG,<br><br>            Defendants. | Case No. 1:23-cv-000636-SEG |

## DEFENDANTS MERCEDES-BENZ USA, LLC AND MERCEDES-BENZ GROUP AG'S MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................1

BACKGROUND ...................................................................3

LEGAL STANDARD ...............................................................8

ARGUMENT .......................................................................9

I.      Because Plaintiffs Fail to Describe Defects in Component Parts, All Claims
        Purporting to Arise from Them Should Be Dismissed....................................9

II.     Plaintiffs Fail to Plead Pre-Sale Knowledge of Defects in Component Parts
        Required for Plaintiffs' Statutory and Common Law Fraud Claims. ............10

        A.      Plaintiffs Fail to Plead Facts Showing MBUSA's or MBG's
                Pre-Sale Knowledge of Defects in Independent Component
                Parts. ..................................................................11

        B.      Plaintiffs' Fraudulent Omission Claims Fail Because They Do
                Not Allege Sufficient Facts to Establish Duties of Disclosure...........15

III.    All Georgia Claims Fail Because Plaintiffs New, Clay, and Hines Do Not
        Allege Facts Showing Their Vehicles Manifested Any Problems.................17

IV.     The Florida Implied Warranty Claim Fails for Lack of Privity.....................19

CONCLUSION ................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................8

*Barnes v. AstraZeneca Pharms. LP*,
   253 F. Supp. 3d 1168 (N.D. Ga. 2017) .................................................8

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017)...............................................12

*Beeney v. FCA US LLC*,
   2023 WL 6962116 (D. Del. Oct. 20, 2023) ........................................17

*Bierlein v. Bernie's Motor Sales, Inc.*,
   1986 WL 6757 (Ohio Ct. App. June 12, 1986).....................................16

*Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*,
   2010 WL 11601332 (N.D. Ga. Sep. 1, 2010) .......................................11

*United States ex rel. Clausen v. Lab'y Corp. of Am.*,
   198 F.R.D. 560 (N.D. Ga. 2000), *aff'd*, 290 F.3d 1301 (11th Cir.
   2002) ......................................................................................................8

*Doe v. Boys Clubs of Greater Dall., Inc.*,
   907 S.W.2d 472 (Tex. 1995) .........................................................15, 16

*Farrales v. Ford Motor Co.*,
   2022 WL 1239347 (N.D. Cal. Apr. 27, 2022) ....................................10

*Franco v. Ford Motor Co.*,
   644 F. Supp. 3d 672 (C.D. Cal. 2022) ................................................14

*Glass v. BMW of N. Am. LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011) .........................................14

*Gonzalez v. Am. Honda Motor Co.*,
   720 F. Supp. 3d 833 (C.D. Cal. 2024) ..................................................9

*Gregorio v. Ford Motor Co.*,
    522 F. Supp. 3d 264 (E.D. Mich. 2021) ............................................................... 11

*Hall v. Gen. Motors LLC*,
    2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) .................................................. 16

*Hauck v. Advanced Micro Devices, Inc.*,
    2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ....................................................... 17

*Hendricks v. DSW Shoe Warehouse, Inc.*,
    444 F. Supp. 2d 775 (W.D. Mich. 2006).............................................................. 15

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ............................................................................... 15

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................................... 19

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ......................................................................... 15, 16

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) ............................................................... 20

*McIntosh v. Samsung Elecs. Co.*,
    2021 WL 9595602 (N.D. Ga. Feb. 19, 2021) ..................................................... 17

*McKee v. Gen. Motors LLC*,
    376 F. Supp. 3d 751 (E.D. Mich. 2019) .............................................................. 12

*McQueen v. BMW of N. Am., LLC*,
    2013 WL 4607353 (D.N.J. Aug. 29, 2013)......................................................... 10

*Mountain Club Owner's Ass'n v. Graybar Elec. Co.*,
    2014 WL 130767 (E.D. Cal. Jan. 14, 2014) ......................................................... 9

*Myers v. Provident Life & Accident Ins. Co.*,
    564 F. Supp. 3d 1157 (M.D. Fla. 2021) .............................................................. 15

*Newbauer v. Carnival Corp.*,
    26 F.4th 931 (11th Cir. 2022) ............................................................................... 8

*In re Nexus 6P Prod. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................14

*Padilla v. Porsche Cars N. Am., Inc.*,
  391 F. Supp. 3d 1108 (S.D. Fla. 2019) ...............................................................20

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) .....................................................13

*In re Samsung*,
  2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) .....................................................15

*Shelor v. Jaguar Land Rover N. Am. LLC*,
  2025 WL 1580834 (M.D. Fla. Jan. 31, 2025) ......................................................19

*Sloan v. Gen. Motors LLC*,
  2017 WL 3283998 (N.D. Cal. Aug. 1, 2017).......................................................13

*Smith v. Gen. Motors LLC*,
  988 F.3d 873 (6th Cir. 2021) ...............................................................................11

*Szep v. Gen. Motors LLC*,
  491 F. Supp. 3d 280 (N.D. Ohio 2020) ...............................................................15

*Terrill v. Electrolux Home Prods., Inc.*,
  753 F. Supp. 2d 1272 (S.D. Ga. 2010)................................................................17

*Toca v. Tutco, LLC*,
  430 F. Supp. 3d 1313 (S.D. Fla. 2020) ...............................................................19

*Uzelac v. MBUSA*,
  2020 WL 13577557 (E.D. Mich. Apr. 27, 2020)................................................18

*Valiente v. Unilever U.S., Inc.*,
  2022 WL 18587887 (S.D. Fla. Dec. 8, 2022) ......................................................19

*Varner v. Domestic Corp.*,
  2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ........................................................16

*Virgilio v. Ryland Grp., Inc.*,
  680 F.3d 1329 (11th Cir. 2012) ...........................................................................15

*Volinsky v. Lenovo (U.S.) Inc.*,
   2024 WL 1299315 (M.D. Fla. Mar. 27, 2024)....................................................12

*Washburn v. Sterling McCall Ford*,
   521 S.W.3d 871 (Tex. App. 2017) ........................................................................15

**Statutes**

California Consumers Legal Remedies Act......................................................15, 16

California False Advertising Act..............................................................................15

California Unfair Competition Law..........................................................................15

Florida Deceptive and Unfair Trade Practices Act .................................................12

Georgia Fair Business Practices Act ........................................................................17

Georgia Uniform Deceptive Trade Practices Act ...................................................17

New Jersey Consumer Fraud Act.............................................................................14

Texas Deceptive Trade Practices Consumer Protection Act...................................15

**Other Authorities**

Fed. R. Civ. P. 9(b)............................................................................8, 11, 12, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................8

## INTRODUCTION

This case is and always has been about an alleged Rear Subframe Defect. But plaintiffs now have expanded their theory to encompass the corrosion of component parts of their vehicles *independent* of the Rear Subframe Defect. While the Second Amended Consolidated Class Action Complaint ("SAC") makes passing references to these parts (*e.g.*, brake lines, suspension springs, exhaust systems, gas lines, and rear axles), plaintiffs have not pleaded the facts necessary to state any claim for, or even to meaningfully describe, any corrosion defects in component parts *independent* of the rear subframe. All plaintiffs' claims premised on this theory should thus be dismissed.

The SAC alleges a purported defect in plaintiffs' vehicles' rear subframes, which the SAC defines (and repeatedly describes as) the "Rear Subframe Defect." *See, e.g.*, SAC ¶¶ 3, 10, 12–18. It goes on to repeatedly allege that vehicle owners have experienced corrosion *as a result of* the Rear Subframe Defect, sometimes allegedly affecting component parts like brake lines, suspension springs, exhaust systems, gas lines, and rear axles. *See, e.g.*, *id.* ¶¶ 142–45, 155–56, 243–44. These same allegations were at the heart of prior complaints in this action, and plaintiffs and defendants have repeatedly stated that this case is about the alleged Rear Subframe Defect. *See, e.g.*, Pls.' Opp'n to MBUSA's Mot. to Dismiss, Dkt. 31 at 1; MBG's Mot. to Dismiss, Dkt. 32 at 2; MBUSA's Reply in Supp. of Mot. to

Dismiss, Dkt. 37 at 11. Yet, during November and December 2025 discovery conferences, just before filing the SAC, plaintiffs asserted for the first time that they are also asserting claims arising from alleged defects to component parts *independent of* the Rear Subframe Defect. This is contrary not only to the history of this case, but to the SAC itself, which describes corrosion of component parts caused by the Rear Subframe Defect. Given the SAC's scant allegations regarding component parts, it is not surprising that plaintiffs have not alleged facts showing that Mercedes-Benz USA, LLC ("MBUSA") or Mercedes-Benz Group AG ("MBG") had pre-sale knowledge of any purported defects in component parts, which is fatal to their fraud claims. Nor do plaintiffs allege any facts showing that MBUSA or MBG knew or should have known of any independent defects in component parts. And without awareness of such defects, MBUSA and MBG could have had no duty to disclose them—which alone dooms plaintiffs' claims based on fraudulent omissions related to alleged defects in other component parts.

Putting aside plaintiffs' revisionist effort to rely on unpleaded defects in component parts, plaintiffs' Georgia claims and Florida implied warranty claim should be dismissed for additional reasons. As to the former, the Georgia plaintiffs fail to allege any cognizable injury or that anything *ever* went wrong with their vehicles. All plaintiffs' Georgia-law claims require pleading facts showing injury, so their failure to do so requires dismissal. As to the latter, Florida law requires

privity of contract, which plaintiffs have not alleged, to assert an implied warranty claim and does not recognize a third-party beneficiary exception. Furthermore, even if Florida law recognized such an exception, plaintiffs' conclusory allegations that they are the intended beneficiaries are insufficient.

## <u>BACKGROUND</u>

On December 31, 2024, this Court granted in part and denied in part defendants' motion to dismiss plaintiffs' Consolidated Class Action Complaint. Dkt. 70. After obtaining leave to amend, plaintiffs filed a First Amended Consolidated Class Action Complaint ("FAC") on September 26, 2025. Dkt. 101.

On October 10, 2025, MBUSA and MBG moved to dismiss plaintiffs' FAC. Dkt. 102. Before the Court ruled, plaintiffs sought leave to amend, which the Court granted. Dkt. 121. Plaintiffs filed a SAC on December 17, 2025. Dkt. 123.

The SAC is thus plaintiffs' third consolidated complaint alleging a Rear Subframe Defect in their vehicles. Plaintiffs define the "Rear Subframe Defect" as a defect that inheres in the class vehicles' "rear subframes" (SAC ¶ 3), and allege that "[a]s early as 2009, and likely earlier, Mercedes was aware of the ***Rear Subframe Defect***, should have been aware of the ***Rear Subframe Defect*** through exercise of reasonable care, and/or was negligent in failing to be aware of the ***Rear Subframe Defect***" (*id.* ¶ 381 (emphases added)). In both the SAC and all earlier complaints, plaintiffs allege that "[t]he Rear Subframe Defect . . . ***causes corrosion***

*of other components* on the underside of Class Vehicles." *Id.* ¶ 5(b) (emphasis added); Class Action Compl., Dkt. 1 ¶ 3 ("The Class Vehicles' rear subframes have a dangerous safety defect ('Rear Subframe Defect') that . . . causes corrosion of other components on the underside of the Class Vehicles"); FAC ¶ 5 ("The Rear Subframe Defect . . . causes corrosion of other components on the underside of the Class Vehicles"). But they never purport to rely on any defects in other component parts *independent* of the alleged Rear Subframe Defect. Yet, during discovery conferences in this case in November and December 2025, plaintiffs for the first time asserted that they also "allege[] a corroded defect with respect to component parts, such as the brake lines, et cetera[.]" *See, e.g.*, Dkt. 117 (Dec. 12, 2025 Tr. at 5:9–10.)

Given the SAC's focus on the alleged Rear Subframe Defect, plaintiffs' allegations regarding "technical details" unsurprisingly focus on the rear subframe. SAC ¶¶ 349–80. When plaintiffs address corrosion of specific component parts, they do so in relation to the Rear Subframe Defect. *Id.* ¶¶ 373–74; *id.* ¶ 375 ("[T]he Rear Subframe Defect has impacted the exhaust systems of Class Vehicles, the gas lines, and/or the rear axles[.]"); *see also id.* ¶ 7 ("Corrosion on the rear subframe makes the component and its attached suspension parts structurally unstable and prone to failure."). Moreover, their purported complaint about the design of the subframe—that it is made from "tubular carbon steel" that "rusts from the inside

out" so that a "typical visual inspection" will not detect corrosion (*see id.* ¶¶ 3, 11, 365, 401(b), 442, 464, 518, 583, 633, 723, 781, 798, 849, 901, 951, 1002, 1053, 1101, 1146, 1199, 1249, 1284, 1339, 1387)—is not alleged to apply to component parts.

Many of plaintiffs' other key allegations likewise focus on the Rear Subframe Defect and are silent as to defects in other component parts. For example, plaintiffs cite design, engineering, and testing data, repair data, consumer complaints, service bulletins, a large number of rear subframe replacement orders, actions taken in foreign markets, and service center employees' familiarity with the alleged Rear Subframe Defect. *Id.* ¶¶ 381–408. None of these allegations claim defects in other component parts independent of the subframe.

For instance, plaintiffs point to consumer complaints about the Rear Subframe Defect. *Id.* ¶ 386. But those cited complaints always concern purported issues with the rear subframe:

- "Right rear trailing arm mount became ***detached from sub frame***. Sheet metal on ***rear suspension sub frame*** ripper / tore so that rear trailing arm is only attached to lower part of mount, and not attached to vehicle." *Id.* ¶ 390(a) (emphases added).

- "The ***rear 'K' suspension subframe*** assembly had to be replaced because of ***rust internally in the vehicle frame***. ***There was no other rust***, internally or externally visible, on the entire car. . . . If the ***subframe*** became disconnected . . . ." *Id.* ¶ 390(b) (emphases added).

- "At the recent regularly scheduled yearly maintenance service completed on 12/28/21 we were advised that the . . . '***rear sub-frame is beginning to rust through*** and has a hole on the right rear (RR) and

the recommendation was the '***replacement of rear sub-frame*** soon' at an estimated cost of $4,242.40 . . . ." *Id.* ¶ 390(c) (emphases added).

- "The car was brought in for scheduled maintenance and they told me that my ***rear sub frame*** rusted out and had snapped . . . ." *Id.* ¶ 390(d) (emphasis added).

- "I took it to my local dealer. They found that the ***rear subframe*** had rusted through and snapped, effectively detaching my left rear wheel from the car . . . ." *Id.* ¶ 400(a) (emphasis added).

- "The vehicle was taken to an independent mechanic where it was informed the ***sub frame*** was corroded . . . ." *Id.* ¶ 400(b) (emphasis added).

- "The vehicle was taken to the dealer where it was diagnosed that the ***rear subframe*** was rusted and needed to be replaced . . . ." *Id.* ¶ 400(c) (emphasis added).

- "When I went to pick up the car, I find out from the mechanic that the ***rear sub-frame*** is rotting . . . ." *Id.* ¶ 400(d) (emphasis added).

The SAC then moves on to a service bulletin advising technicians to "check the rear subframe of certain model years for corrosion[.]" *Id.* ¶ 391. The service bulletin states, "[a]s part of the maintenance procedure, the ***rear axle carrier*** [another name for the rear subframe] is checked for corrosion[.]" *Id.* (emphasis added). Plaintiffs allege that "[t]he service bulletin shows that Mercedes was aware of the ***Rear Subframe Defect*** in many of the Class Vehicles." *Id.* ¶ 395 (emphasis added).

From the very beginning, the SAC is clear that it is alleging "a dangerous safety defect ('Rear Subframe Defect') that causes the rear subframes, attached components, and nearby parts to prematurely rust or corrode." *Id.* ¶ 3; *see also id.*

6

¶ 1 (alleging this action is brought on behalf of persons "who purchased certain vehicles equipped with uniform and uniformly defect rear subframes"). This is consistent with both parties' prior understanding of the allegations underlying the litigation. In fact, in prior briefings, plaintiffs repeatedly refer to a defect in the singular. *See, e.g.*, Pls.' Opp'n to MBUSA's Mot. to Dismiss, Dkt. 31 at 1 ("This is a consumer protection and breach of warranty case about *a* dangerous safety *defect*, and a car manufacturer that concealed—and continues to conceal—*that safety defect* from its customers.") (emphases added); Pls.' Opp'n to MBG's Mot. to Dismiss, Dkt. 34 at 4 ("The cars MBG designed, manufactured, and promoted/sold (including through MBUSA) have *a serious defect: the rear subframe*, which stabilizes the class vehicles and holds the rear suspension and rear wheels securely to them . . . is subject to catastrophic failure.") (emphasis added). MBUSA's and MBG's briefings reflect the same understanding. *See, e.g.*, MBUSA's Reply in Supp. of Mot. to Dismiss, Dkt. 37 at 11 ("In this case, plaintiffs only make conclusory allegations of identicality . . . but recognize that the *subframes* of the different putative class vehicles are *different*.") (emphasis added); MBG's Mot. to Dismiss, Dkt. 32 at 2 ("The Extended Warranty applies to the replacement of the *rear subframe* for up to 20 years and unlimited miles.") (emphasis added). Unsurprisingly then, and as shown below, plaintiffs have not pleaded facts showing

entitlement to relief on any claim premised on any component-part defects independent of the rear subframe.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Though the Court accepts plaintiffs' well-pled factual allegations, "the Court need not accept as true Plaintiff's legal conclusions, including those couched as factual allegations." *Barnes v. AstraZeneca Pharms. LP*, 253 F. Supp. 3d 1168, 1172 (N.D. Ga. 2017) (quoting *Iqbal*, 556 U.S. at 678). Plaintiffs must "plead sufficient facts to support each element of [each] claim" in "order to survive [a defendant's] motion to dismiss." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022).

Plaintiffs' fraud-based claims, including claims brought under consumer protection statutes that sound in fraud, require that the circumstances constituting fraud or mistake be stated with particularity. Fed. R. Civ. P. 9(b). This serves to inform defendants of the "'precise misconduct with which they are charged' and . . . 'to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed.'" *United States ex rel. Clausen v. Lab'y*

8

*Corp. of Am.*, 198 F.R.D. 560, 562 (N.D. Ga. 2000), *aff'd*, 290 F.3d 1301 (11th Cir. 2002) (internal citations omitted).

## ARGUMENT

### I.    Because Plaintiffs Fail to Describe Defects in Component Parts, All Claims Purporting to Arise from Them Should Be Dismissed.

The SAC asserts a single "Rear Subframe Defect," not defects in other component parts. SAC ¶ 5. While plaintiffs theorize that the Rear Subframe Defect causes downstream damage to "other components on the underside of the Class Vehicles, including the brake lines, suspension springs, exhaust system, gas lines, and rear axle," they offer no allegations suggesting any independent corrosion defects in multiple different component parts. *Id.* Courts across the nation routinely dismiss claims for which plaintiffs "fail[] to identify the alleged defect." *See Mountain Club Owner's Ass'n v. Graybar Elec. Co.*, 2014 WL 130767, at *2 (E.D. Cal. Jan. 14, 2014). Courts also dismiss claims to the extent that they are premised on a specific, deficient theory of defect. *See Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 849 (C.D. Cal. 2024) (granting motion to dismiss as to claims arising from Honda entertainment system defect but not as to all claims arising from Honda braking system defect). This Court should do the same.

Plaintiffs' allegations make clear that they assert claims and seek damages arising from the Rear Subframe Defect. *See* SAC ¶ 379 (plaintiffs allege they "were injured at the point of sale by not receiving the benefit of their bargain: ***vehicles***

*without a Rear Subframe Defect*") (emphasis added). Plaintiffs' technical allegations also focus on the rear subframe. *Id.* ¶¶ 349–80. The SAC mentions the corrosion of component parts only in passing, suggesting those parts can corrode. *See, e.g.*, *id.* ¶ 363. But plaintiffs must do more than allege susceptibility to corrosion. *McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) (dismissing consumer-fraud claim because the complaint "merely identifies the *effects* of the alleged defect. . . . There is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective."). Plaintiffs "d[o] not explain the nature of the alleged defect[,]" which is fatal to their claims purporting to arise from independent alleged defects in multiple different component parts. *Farrales v. Ford Motor Co.*, 2022 WL l239347, at *6 (N.D. Cal. Apr. 27, 2022).

## II.     Plaintiffs Fail to Plead Pre-Sale Knowledge of Defects in Component Parts Required for Plaintiffs' Statutory and Common Law Fraud Claims.

Even if they had adequately alleged independent defects in component parts (they have not), plaintiffs have failed to adequately allege MBUSA's and MBG's knowledge of such defects. Plaintiffs' fraud-based claims must therefore be dismissed.

10

### A. Plaintiffs Fail to Plead Facts Showing MBUSA's or MBG's Pre-Sale Knowledge of Defects in Independent Component Parts.

Plaintiffs' consumer-protection claims[1] under California, Connecticut, Georgia, Indiana, Massachusetts, Missouri, New Jersey, New York, Ohio, and Texas law, and plaintiffs' fraudulent omission claims[2] under California, Florida, Massachusetts, New York, Ohio, Tennessee, and Virginia law fail because plaintiffs do not allege sufficient facts showing MBUSA or MBG had pre-sale knowledge of any defects in component parts.

Even assuming plaintiffs alleged facts showing independent defects in other component parts (they did not), in an omission-based case, they must also plausibly allege that defendants had knowledge of the defects allegedly concealed. *See Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 277 (E.D. Mich. 2021) (defendant's pre-sale knowledge of the defect is an element that must be pleaded to state a fraudulent concealment claim). Under Rule 9(b), this requires specifics as to "how and when" MBUSA and MBG learned about the purported defects and concealed them from plaintiffs. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 875 (6th Cir. 2021); *Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*, 2010 WL 11601332, at *4 (N.D. Ga. Sep. 1, 2010) ("Essentially, Rule 9(b) requires plaintiffs to plead with

---

[1] Counts 2, 5, 6, 13, 14, 17, 24, 30, 33, 36, 39, 50.

[2] Counts 4, 11, 26, 38, 41, 49, 55.

particularity the 'who, what, where, when, why, and how' of the alleged fraud or mistake.") (internal citation omitted); *Volinsky v. Lenovo (U.S.) Inc.*, 2024 WL 1299315, at *5 n.1 (M.D. Fla. Mar. 27, 2024) (holding omission-based claim under Florida Deceptive and Unfair Trade Practices Act failed to satisfy Rule 9(b) where plaintiff did not plead "(1) precisely . . . what omissions were made; (2) the time and place of each such [omission] and the person responsible for . . . not making each statement; [and] (3) the content of such [omissions] and the manner in which they misled [him] . . . .") (internal citation omitted).

Plaintiffs' knowledge allegations, however, address only the Rear Subframe Defect. Their references to pre-release testing, warranty data, repair orders and replacement-parts orders related to rear subframes (SAC ¶¶ 381, 396–97) do not even suggest MBUSA's or MBG's knowledge of any independent defects in component parts.[3] Their identification of a service bulletin regarding the rear subframe is likewise deficient—plaintiffs do not allege that it addressed separate component-part defects and allege only that it shows "aware[ness] of the Rear

---

[3] In any event, courts "routinely reject generalized allegations about 'testing' and manufacturer 'analyses'" as a basis for pleading a manufacturer's knowledge. *McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 761 (E.D. Mich. 2019); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) ("[G]eneric allegations of . . . access to 'testing' and 'analysis,' [have been found] insufficient to support an inference that a defendant knew about a design defect at the product's time of sale.") (internal citation omitted).

Subframe Defect[.]" SAC ¶ 395; *see also Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (finding plaintiff's reliance on a bulletin that "addresses the general problem" and "does not mention the alleged specific defect" insufficient to establish a manufacturer's knowledge).

Similarly, plaintiffs' reference to "[a]ctions taken by MBG in foreign markets to remedy the Rear Subframe Defect" offers nothing to establish knowledge of any supposed independent defects in different component parts (and would not apply to MBUSA in any event). SAC ¶ 381(h). And their assertion that "Mercedes service center employees [have] familiarity with and knowledge of the Rear Subframe Defect" is irrelevant to whether MBUSA or MBG knew of some unrelated, independent corrosion defect.[4] *Id.* ¶ 381(i).

Plaintiffs' reliance on consumer complaints fares no better. The SAC recites no consumer complaints about any defects in component parts independent of the subframe. When component parts are even mentioned, it is always in relation to complaints about the rear subframe. *See id.* ¶ 401(a) ("They called and told me the rear subframe is rotted . . . the brake lines . . . are also about to fail . . . ."); ¶ 401(b) ("I recently had the rear subframe . . . fail . . . . I found a crack next to one of the

---

[4] Not to mention, knowledge possessed by employees of third-party service centers cannot be attributed to MBUSA or MBG. *See Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *12–14 (C.D. Cal. Apr. 13, 2017) (consumers' complaints to dealerships are insufficient to establish knowledge).

aluminum suspension struts mounting flange"); ¶ 401(c) ("My brakes failed and I was just told the Subframe is Rusted Through."). Of course, consumer complaints that do not assert any independent defects in component parts cannot show knowledge of any such defects. Even if these complaints did address independent defects in other component parts—which they do not—"a handful of complaints do not, by themselves, plausibly show that [the defendant] had knowledge of the defects and concealed the defects from customers." *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 909 (N.D. Cal. 2018).

In short, plaintiffs do not allege facts showing MBUSA or MBG knew of any supposed component defect when plaintiffs purchased their vehicles. Thus, to the extent that they are premised on any purported component-part defects independent of the rear subframe, Counts 2, 4, 5, 6, 11, 13, 14, 17, 24, 26, 30, 33, 36, 38, 39, 41, 49, 50, and 55 cannot stand. *See, e.g.*, *Glass v. BMW of N. Am. LLC*, 2011 WL 6887721, at *8 (D.N.J. Dec. 29, 2011) (granting motion to dismiss New Jersey Consumer Fraud Act and common law omissions claims under Rule 9(b) where "Plaintiff does not specifically allege: (1) who at BMW NA possessed knowledge of the defect; (2) when or how the decision was made to conceal the defect from customers; (3) that all, or even substantially all, MINI Cooper vehicles have a defective power steering system; and (4) that BMW NA knew that the power steering was certain to fail"); *Franco v. Ford Motor Co.*, 644 F. Supp. 3d

672, 681 (C.D. Cal. 2022); *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 295

(N.D. Ohio 2020); *Myers v. Provident Life & Accident Ins. Co.*, 564 F. Supp. 3d

1157, 1183 (M.D. Fla. 2021).

### B. Plaintiffs' Fraudulent Omission Claims Fail Because They Do Not Allege Sufficient Facts to Establish Duties of Disclosure.

Any fraudulent omission and omission-based consumer protection claims

arising from independent defects in other component parts must be dismissed

because plaintiffs have not alleged facts showing that MBUSA or MBG owed

duties of disclosure to plaintiffs regarding the other parts.[5] As explained above,

*supra* Section II(A), plaintiffs do not allege that MBUSA or MBG knew of any

component-part defects independent of the subframe. And without awareness, there

can be no duty to disclose. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336

(1997) (duty arises with exclusive knowledge of material facts or active

concealment of information); *In re Samsung*, 2020 WL 7664461, at *6–11 (N.D.

---

[5] *See, e.g.*, *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) ("Absent a duty to disclose, Plaintiff's [California CLRA, UCL, and False Advertising Act] claims are foreclosed."); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337–38 (11th Cir. 2012) (Florida Deceptive and Unfair Trade Practices Act); *Washburn v. Sterling McCall Ford*, 521 S.W.3d 871, 876 (Tex. App. 2017) (holding that under the Texas Deceptive Trade Practices Consumer Protection Act, "a defendant has no duty to disclose material facts that it should have known but does not") (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 479 (Tex. 1995)); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 782 (W.D. Mich. 2006) ("Michigan courts would not recognize a claim under [Michigan Consumer Protection Act] in the absence of a duty of disclosure.").

Cal. Dec. 24, 2020) (applying *LiMandri* to California CLRA claim); *Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020) ("[T]o prevail on this type of fraudulent omission claim in the defective product context, a plaintiff must plead, among other things, that a manufacturer knew of [the] defect before sale.") (internal quotations omitted); *Varner v. Domestic Corp.*, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (requiring plaintiffs to "plead with particularity facts sufficient to show [the defendant's] knowledge of the risk"); *Bierlein v. Bernie's Motor Sales, Inc.*, 1986 WL 6757, at *6 (Ohio Ct. App. June 12, 1986) ("Mere nondisclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the Act."); *Doe v. Boys Clubs of Greater Dall. Inc.*, 907 S.W.2d 472, 479 (Tex. 1995) ("[A] failure to disclose material information necessarily requires that the defendant have *known* the information and have failed to bring it to the plaintiff's attention.").

To the extent the SAC even mentions a duty to disclose, it is based solely on allegations about the Rear Subframe Defect. *See, e.g.*, SAC ¶ 436 ("Mercedes knew, or was reckless in not knowing, of the ***Rear Subframe Defect***; Mercedes was under a duty to disclose the Defect based upon its exclusive knowledge of it[.]" (emphasis added)). And plaintiffs' own allegations belie any notion that MBUSA or MBG had exclusive knowledge about other defects in multiple component parts. The complaints referenced in the SAC were "publicly available"

16

(*see id.* ¶¶ 13, 390), so plaintiffs had access to them, too. *Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at \*7, \*10, \*13 (N.D. Cal. Apr. 4, 2019) (dismissing Florida Deceptive and Unfair Trade Practices Act and other claims to the extent based on a product defect that journalists had reported before the plaintiff's purchase). Plaintiffs have failed to allege any duty to disclose independent defects in other component parts, warranting dismissal of their claims.

### III.    All Georgia Claims Fail Because Plaintiffs New, Clay, and Hines Do Not Allege Facts Showing Their Vehicles Manifested Any Problems.

The Georgia breach of implied warranty claim and the Georgia Fair Business Practices Act ("GFBPA") and Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") claims—premised on either the alleged Rear Subframe Defect or any independent defects in component parts—each fail because plaintiffs New, Clay, and Hines have not alleged facts showing any cognizable injury or manifestation of the alleged defect. Manifestation of a defect is an element of each claim asserted under Georgia law. *See Beeney v. FCA US LLC*, 2023 WL 6962116, at \*6–7 (D. Del. Oct. 20, 2023) (dismissing claims under consumer protection statutes, including the GFBPA, because plaintiffs failed to establish that defendants' practices caused them a cognizable injury); *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1291–92 (S.D. Ga. 2010) (dismissing GUDTPA claims because plaintiffs did not allege a future injury); *McIntosh v. Samsung Elecs. Co., Ltd.*, 2021 WL 9595602, at \*11 (N.D. Ga. Feb. 19, 2021) (a breach of

implied warranty under Georgia law requires the "injury was caused by the defective goods").

The SAC alleges no facts showing that New, Clay, or Hines suffered any injury or face imminent future harm based on *any* defect theory—whether the Rear Subframe Defect or any other purported independent corrosion defect. Other plaintiffs allege that they were informed, following an inspection, that their rear subframes were "significantly" or "severely" corroded and would need replacement "soon" (*see, e.g.*, SAC ¶ 34)—but such allegations are conspicuously absent as to New, Clay, and Hines. Indeed, these plaintiffs do not allege that they experienced *any* malfunction with their vehicle, that performance issues arose related to their vehicle's rear subframe, or that their vehicle's rear subframe needed repair or replacement. *See id.* ¶¶ 50–70. These plaintiffs thus have not alleged any harm that cannot be addressed by the Extended Warranty issued by MBUSA. *See Uzelac v. MBUSA*, 2020 WL 13577557, at *3 (E.D. Mich. Apr. 27, 2020) ("The majority of courts to address this question have found that a car owner does not have a viable products liability claim . . . when the alleged automotive defect does not manifest itself.") (collecting cases finding no implied warranty claim where plaintiffs failed to allege any manifest defect in any of their cars).

Counts 12 to 14 thus must be dismissed for failure to allege facts showing any concrete injury or manifestation of a defect, a necessary element for each of New's, Clay's, and Hines's asserted causes of action.

### IV.    The Florida Implied Warranty Claim Fails for Lack of Privity.

Harris's implied warranty claim must be dismissed because she does not allege facts showing that she purchased her car from either MBG or MBUSA as required under Florida law. SAC ¶ 40 ("Ms. Harris owns a 2014 Mercedes-Benz SLK 350, which she purchased certified pre-owned from Mercedes-Benz of Orange Park in Jacksonville, Florida in 2017."). Florida district courts have required privity of contract to assert an implied warranty claim and have declined to recognize a third-party beneficiary exception to the privity requirement. *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1325–26 (S.D. Fla. 2020); *Shelor v. Jaguar Land Rover N. Am. LLC*, 2025 WL 1580834, at *28 (M.D. Fla. Jan. 31, 2025) (collecting cases); *Valiente v. Unilever U.S., Inc.*, 2022 WL 18587887, at *14 (S.D. Fla. Dec. 8, 2022) ("[U]nder Florida law, there is no third-party beneficiary exception to the privity requirement for breach of implied warranty claims.").

Even if a third-party beneficiary exception were recognized under Florida law, Harris has not sufficiently pled facts showing that such an exception applies, as she merely relies on a conclusory allegation that she was the intended third-party beneficiary of the transaction. SAC ¶ 624; *Leon v. Cont'l AG*, 301 F. Supp. 3d

1203, 1224 (S.D. Fla. 2017) ("A claim for a breach of implied warranty under a third-party beneficiary theory, if it exists, does not arise from the conclusory assertion that Plaintiffs were 'the intended third-party beneficiaries of contracts between Defendants and its dealers.'") (citations omitted); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1119 (S.D. Fla. 2019) (same). Harris's implied warranty claim should be dismissed. *See, e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1362 (N.D. Ga. 2013).

## CONCLUSION

This case has always been about an alleged defect in plaintiffs' vehicles' rear subframes. In plaintiffs' own words, "***rear subframes*** on certain Mercedes models are prone to serious corrosion well before the end of the car's useful life (the 'Defect'), causing the subframes (and related parts) to fail." Pls.' Opp'n to MBUSA's Mot. to Dismiss, Dkt. 31 at 1 (emphasis added). Plaintiffs cannot now, years into this litigation, attempt to expand the scope of their claims to encompass any defects in component parts independent of the rear subframe that their complaint does not define nor plead. For the foregoing reasons, MBUSA and MBG respectfully request that the Court grant their motion to dismiss plaintiffs' Second Amended Consolidated Class Action Complaint with prejudice to the extent that it is based on any alleged defects in component parts independent of the subframe,

and dismiss the Georgia claims and the Florida implied warranty claim with

prejudice in all respects.


Dated: January 21, 2026                    Respectfully submitted,


                                           */s/ Troy M. Yoshino*
                                           Troy M. Yoshino*
                                           Daniel M. Blouin*
                                           Shawn R. Obi*
                                           **WINSTON & STRAWN LLP**
                                           101 California Street, 21st Floor
                                           San Francisco, CA 94111
                                           Tel.: (415) 591-1000
                                           TYoshino@winston.com
                                           DBlouin@winston.com
                                           SObi@winston.com
                                           *admitted *pro hac vice*

                                           */s/ S. Wade Malone*
                                           S. Wade Malone
                                           Georgia Bar No. 468015
                                           **NELSON MULLINS RILEY &
                                           SCARBOROUGH LLP**
                                           201 17th St. NW
                                           Atlanta, Georgia 30363
                                           Tel.: 404-322-6000
                                           Fax: 404-322-6050
                                           wade.malone@nelsonmullins.com

                                           ***Counsel for Defendants
                                           Mercedes-Benz USA, LLC
                                           and Mercedes-Benz Group AG***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 21, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Troy M. Yoshino*
Troy M. Yoshino

## CERTIFICATE OF COMPLIANCE

The foregoing complies with Local Rule 5.1 and was prepared using a 14-point Times New Roman font.

*/s/ Troy M. Yoshino*
Troy M. Yoshino