**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| ALEXANDER SOWA, *et al.*, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC and MERCEDES-BENZ GROUP AG f/k/a DAIMLER AG,<br><br>Defendants. | Case No. 1:23-cv-000636-SEG |

**DEFENDANTS MERCEDES-BENZ USA, LLC AND MERCEDES-BENZ GROUP AG'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

I. Plaintiffs Do Not Allege Defects in Component Parts Independent of the Subframe. ................................................................................. 2

II. Plaintiffs Fail to Plead MBUSA's or MBG's Knowledge of Unidentified Defects in Component Parts. ................................................................. 4

A. Plaintiffs Fail to Plead Facts Showing MBUSA's or MBG's Pre-Sale Knowledge of Defects in Independent Component Parts. ............ 4

B. Plaintiffs Do Not Allege Sufficient Facts to Establish Duties of Disclosure. ........................................................................... 8

III. Plaintiffs New, Clay, and Hines Have Not Adequately Pled a Cognizable Injury as Required to Assert Claims Under Georgia Law. ............................ 9

IV. Plaintiff Harris Has Not Adequately Pled an Exception to Privity Under Florida's Implied Warranty Law. ................................................. 13

CONCLUSION ........................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10, 11, 14

*Bauser v. Porsche Cars N.A., Inc.*,
2024 WL 2406884 (N.D. Ga. Mar. 25, 2024)....................12

*Beeney v. FCA US LLC*,
2023 WL 6962116 (D. Del. Oct. 20, 2023)....................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*,
2010 WL 11601332 (N.D. Ga. Sep. 1, 2010)....................5

*Bolling v. Mercedes-Benz USA, LLC, et al.*,
2024 WL 3972987 (N.D. Ga. Aug. 27, 2024)....................6

*Brooks v. Westlake Portfolio Mgmt.*,
2025 WL 2743882 (N.D. Ga. June 12, 2025)....................10

*Chappell v. Mercedes-Benz USA, LLC, et al.*,
2025 WL 1090909 (N.D. Ga. Apr. 7, 2025)....................2

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019)....................12

*Gregorio v. Ford Motor Co.*,
522 F. Supp. 3d 264 (E.D. Mich. 2021)....................4

*Hall v. Gen. Motors, LLC*,
2020 WL 1285636 (E.D. Mich. Mar. 18, 2020)....................8

*Hardt v. Chrysler Grp. LLC*,
2015 WL 12683965 (C.D. Cal. June 15, 2015)....................3, 4

*Hauck v. Advanced Micro Devices, Inc.*,
2019 WL 1493356 (N.D. Cal. Apr. 4, 2019)....................9

*Helpling v. Rheem Mfg. Co.*,
2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ....................................................13

*Jaramillo v. Taurus Int'l Mfg., Inc.*,
2024 WL 5305081 (M.D. Ga. Sep. 27, 2024) ....................................................13

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ....................................................8

*McQueen v. BMW of N. Am., LLC*,
2013 WL 4607353 (D.N.J. Aug. 29, 2013) ....................................................3, 4

*Milana v. Eisai, Inc.*,
2022 WL 846933 (M.D. Fla. Mar. 22, 2022) ....................................................8

*Monopoli v. Mercedes-Benz USA, LLC, et al.*,
2022 WL 409484 (N.D. Ga. Feb. 10, 2022) ....................................................6

*Moore-Davis Motors v. Joyner*,
252 Ga. App. 617 (2001) ....................................................11

*Nalley v. Gen. Motors, LLC*,
2022 WL 18459646 (N.D. Ga. Aug. 30, 2022) ....................................................11

*Rose v. Ferrari N. Am., Inc.*,
2024 WL 1209185 (D.N.J. Mar. 20, 2024) ....................................................12

*Shelor v. Jaguar Land Rover N.A. LLC*,
2025 WL 1580834 (M.D. Fla. Jan. 31, 2025) ....................................................14, 15

*Smith v. Gen. Motors LLC*,
988 F.3d 873 (6th Cir. 2021) ....................................................4

*Snowdy v. Mercedes-Benz USA, LLC and Mercedes-Benz Grp. AG*,
2024 WL 1366446 (D.N.J. Apr. 1, 2024) ....................................................7

*Sowa v. Mercedes-Benz Grp. AG and Mercedes-Benz USA, LLC*,
764 F. Supp. 3d 1233 (N.D. Ga. 2024) ....................................................5, 6, 8

*Terrill v. Electrolux Home Prods., Inc.*,
753 F. Supp. 2d 1272 (S.D. Ga. 2010) ....................................................9

*Toca v. Tutco, LLC*,
430 F. Supp. 3d 1313 (S.D. Fla. 2020) ............................................................ 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......................................................................................... 10

*Valiente v. Unilever U.S., Inc.*,
2022 WL 18587887 (S.D. Fla. Dec. 8, 2022) ............................................... 13, 14

*Weiss v. Gen. Motors LLC*,
418 F. Supp. 3d 1173 (S.D. Fla. 2019) ............................................................ 14

**Statutes**

Georgia Fair Business Practices Act ...................................................... 9, 11, 12, 13

Georgia Uniform Deceptive Trade Practices Act ......................................... 9, 12, 13

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................ 4, 7

U.S. Const. art. III ............................................................................................ 1, 10

## INTRODUCTION

Plaintiffs cannot avoid deficiencies in the SAC by mischaracterizing MBG's and MBUSA's Motion as a "request for the Court to reconsider its recent discovery order[.]" Dkt. 134 ("Opp.") at 1. That discovery order was plainly "limited to the matter of ESI search terms" and says nothing about whether plaintiffs adequately pled claims of unidentified component part defects. Dec. 12, 2025 Tr. at 13:12–13.

Nor is there any merit to plaintiffs' assertion that such component-part defects have always been a part of this case because the relevant allegations have not changed. Indeed, that argument cuts the other way—until recently, everyone has understood this case to be about the Rear Subframe Defect. Plaintiffs implicitly acknowledge this by arguing (wrongly) that the Court's prior rulings must be *expanded* to include such component-part defects.

Even if plaintiffs had alleged facts showing component-part corrosion defects (they have not), they fail to allege that either MBG or MBUSA knew of any such defects. The allegations they cite in this regard relate to the rear subframe, not independent corrosion defects in component parts. Opp. at 12. And other potential sources of knowledge, such as service bulletins and customer complaints, do not address any supposed defects independent of the rear subframe. Opp. at 14–15.

Separately, plaintiffs' Opposition cannot save their claims under Georgia and Florida law. As to Georgia, plaintiffs' claims of Article III standing do not satisfy

Georgia's strict requirement of a cognizable injury. As to Florida, whether a third-party beneficiary exception to the privity requirement for implied-warranty claims exists *at all* is an open question. But even if it does, plaintiff Harris's bare allegations that she is an intended beneficiary do not fall within the exception. Plaintiffs' claims under Georgia and Florida law should be dismissed.

## ARGUMENT

### I. Plaintiffs Do Not Allege Defects in Component Parts Independent of the Subframe.

Until plaintiffs' recent insistence that they are asserting independent defects in component parts separate from the rear subframe, all parties understood this case to be about an alleged defect in plaintiffs' vehicles' rear subframes. No prior dismissal briefs or orders addressed purported defects in component parts independent of the rear subframe.

Because alleged defects in parts independent of the alleged "Rear Subframe Defect" had not been a part of this case, plaintiffs' insistence that "allegations regarding corrosion in the SAC are *identical* to those in the complaint filed nearly three years ago" (Opp. at 1) is, at best, a non-sequitur. If anything, that no one previously understood this litigation to include any such independent component-part defects is only a testament to the SAC's failure to adequately plead such claims. *See, e.g.*, *Chappell v. MBUSA, et al.*, 2025 WL 1090909, at *3 (N.D. Ga. Apr. 7, 2025) (granting motion to dismiss, as "[this] is not an academic concern. If

a defendant is not provided notice as to what defect is being alleged, then it is denied a real opportunity to challenge the sufficiency of the allegations.”).

Plaintiffs’ attempt to circumvent the pleading requirement by relying heavily on a single paragraph in the SAC that references component parts *in relation* to the rear subframe is unavailing. *See* Opp. at 2, 5, 10; SAC ¶ 363 (“The vehicle components adjacent to the rear subframe that also tend to experience corrosion (*i.e.*, brake lines, rear springs, exhaust system, gas lines, and rear axle), are made of metals susceptible to corrosion, and are likewise not properly coated and designed to resist corrosion in ordinary and expected use.”). The Court’s reference to Paragraph 363 in ordering ESI search terms does not mean that independent component-part defects were adequately alleged. Opp. at 9–10. Indeed, the Court was clear that its Order was “limited to the search term issue” and did not foreclose Defendants from objecting that information was “outside the scope of proper discovery[.]” Dec. 12, 2025 Tr. at 15:2–6, 15:13–18. The Court certainly did not decide issues regarding the adequacy of pleadings that were not even briefed.

In the context of *this* Motion, plaintiffs’ reliance on a single reference to corrosion in component parts is insufficient. Plaintiffs must do more than merely assert susceptibility to corrosion. *McQueen v. BMW of N. Am., LLC*, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013). Effects of a defect are not enough; rather, plaintiffs must identify “what precisely the defect is[.]” *Id.* Plaintiffs cite to *Hardt v.*

*Chrysler Group LLC*, in arguing that less is required. 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015); Opp. at 11 n.5. But even the *Hardt* plaintiffs identified a "Transmission Defect" and described its symptoms, including their relation to different parts of the car, like the clutch pedal. *Id.* at *1.

Plaintiffs' Opposition points to nothing in the SAC that supports their unfounded conclusion that "[p]laintiffs identified the Defect—corrosion in components adjacent to the rear subframe—offered examples of its manifestation, and identified the causes—improper design, use of metals susceptible to corrosion, and/or failure to properly treat the components to resist corrosion." Opp. at 10. Because plaintiffs fail to identify, much less plead, any independent component-part defects, any claims premised on such defects must be dismissed.

## II. Plaintiffs Fail to Plead MBUSA's or MBG's Knowledge of Unidentified Defects in Component Parts.

### A. Plaintiffs Fail to Plead Facts Showing MBUSA's or MBG's Pre-Sale Knowledge of Defects in Independent Component Parts.

Even if plaintiffs had alleged defects in component parts independent of the subframe, they fail to allege any facts showing MBUSA's or MBG's knowledge of such defects. *See Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 277 (E.D. Mich. 2021). Under Rule 9(b), adequate pleading would require specifics as to "how and when" MBUSA and MBG learned about the purported defects and concealed them from plaintiffs. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 875 (6th

Cir. 2021); *Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*, 2010 WL 11601332, at *4 (N.D. Ga. Sep. 1, 2010).

Plaintiffs wrongly argue that this Court's earlier motion-to-dismiss ruling suggests that MBUSA's and MBG's supposed knowledge of the Rear Subframe Defect "applies with equal force" and "extend[s] to" their knowledge of defects in component parts. *See* Opp. at 12, 16; *Sowa v. MBG*, 764 F. Supp. 3d 1233, 1280–82 (N.D. Ga. 2024) ("*Sowa I*"). But plaintiffs never explain why purported knowledge of an alleged Rear Subframe Defect would confer knowledge of separate defects in other component parts.[1] That is because it does not.

In its prior motion-to-dismiss ruling, this Court identified nine sources of knowledge pled in plaintiffs' complaint and found that less than half supported MBUSA's and MBG's knowledge of the Rear Subframe Defect. *See Sowa I*, 764 F. Supp. 3d at 1282. And the four sources credited by the Court all relate to the rear subframe.

First, the service bulletin from 2018 advised technicians to check "the rear subframe of certain [Class Vehicles] for corrosion[.]" SAC ¶ 391. The Court's prior ruling was unambiguously grounded in awareness of "a need to examine rear

---

[1] By arguing that the December 31, 2024, Order should "extend" to other alleged defects in components parts, plaintiffs effectively concede that the Court's prior ruling did not *address* defects in component parts independent of the subframe. Other defects simply were not previously understood to be part of this case.

subframes for corrosion." *Sowa I*, 764 F. Supp. 3d at 1282. Plaintiffs' argument that the service bulletin, which addressed only the rear subframe, "supports an inference that Mercedes was aware of" independent corrosion defects in *other* component parts fails. Opp. at 15. The Opposition cites only *Monopoli* in support. There, a service bulletin about headrests supported an inference of knowledge where plaintiffs had complained of the same *headrest* issue. *Monopoli v. MBUSA*, 2022 WL 409484, at *9 (N.D. Ga. Feb. 10, 2022). *Monopoli* did not infer a defendant's knowledge of different alleged defects in different parts.

Similarly, plaintiffs' allegations of "the higher than expected number of replacement rear subframes ordered" is inapplicable to component parts. SAC ¶ 396. In its prior ruling, this Court reasoned that plaintiffs' alleged backordering of replacement subframes "should have alerted Mercedes" to an issue with rear subframes. *See Sowa I*, 764 F. Supp. 3d at 1282. Such reasoning does not apply to component parts independent of the subframe, for which plaintiffs do not allege backorders. *See* SAC ¶¶ 143, 293, 398.

Plaintiffs' reliance on *Bolling v. MBUSA* is also misplaced. 2024 WL 3972987 (N.D. Ga. Aug. 27, 2024). There, the court found pre-sale testing specifically related to allegedly defective sunroofs and complaints of shattering sunroofs were sufficient to allege knowledge of a claimed defect causing sunroofs to shatter. *Id.* at *15–16. Here, by contrast, plaintiffs have offered no knowledge

allegations related to any independent corrosion defect in specific, other component parts. Their allegations are grounded in the rear subframe, as the component parts appear only in reference to the rear subframe. *See* SAC ¶ 382 ("During the pre-release process . . . Mercedes necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' rear subframes and adjacent components"). This allegation also is conclusory, as plaintiffs are required to allege facts explaining how the tests conducted allegedly "necessarily revealed the defect." *Snowdy v. MBUSA et al.*, 2024 WL 1366446, at *20 (D.N.J. Apr. 1, 2024) (citing numerous cases reaching the same conclusion).

Plaintiffs further fail to identify customer complaints about other parts, independent of the rear subframe of plaintiffs' vehicles. Opp. at 13–14. For example, plaintiffs Xie, Russolillo, Lin, Ortiz, Russell, and Robinson allege defects relating to their subframes. SAC ¶¶ 107, 130, 174, 198, 251, 275. The Opposition discounts these concerns in a footnote, suggesting there is no meaningful difference between customer complaints that do and do not include the subframe. *See* Opp. at 14 n.7. Plaintiffs miss the point. The SAC defines a single Rear Subframe Defect, and the alleged sources of knowledge concern purported issues with the subframe. The SAC does not allege any facts showing MBUSA's or MBG's knowledge of defects to component parts independent from references to the subframe. As such, fair notice—the "most basic consideration" underlying Rule 9(b)—of any claims

purporting to arise from defects in independent component parts is lacking. *Milana v. Eisai, Inc.*, 2022 WL 846933, at *9 (M.D. Fla. Mar. 22, 2022).

### B. Plaintiffs Do Not Allege Sufficient Facts to Establish Duties of Disclosure.

As shown, plaintiffs have not alleged facts showing MBUSA's or MBG's knowledge of any defects to component parts independent of the subframe. Without awareness, there can be no duty to disclose. *See, e.g.*, *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (duty arises with exclusive knowledge of material facts or active concealment of information); *Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at *3 (E.D. Mich. Mar. 18, 2020) ("[T]o prevail on this type of fraudulent omission claim in the defective product context, a plaintiff must plead, among other things, that a manufacturer knew of [the] defect before sale.") (internal quotations omitted).

Even if such knowledge were pled, it would not be *exclusive* knowledge. The Opposition invites this Court to reject the requirement that plaintiffs plead facts showing MBUSA's or MBG's exclusive knowledge of the defects to establish a duty of disclosure. Opp. at 17. Yet in the same paragraph, the Opposition notes this Court's holding that plaintiffs "may therefore show a duty of disclosure under the consumer protection laws of all relevant states by alleging facts to show that the Rear Subframe Defect implicates product safety and that Defendants had superior and ***exclusive*** knowledge of the defect relative to Plaintiffs." *Sowa I*, 764 F. Supp.

3d at 1287 (emphasis added). Plaintiffs had access to the same publicly available information as MBUSA and MBG. *Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *7, *10, *13 (N.D. Cal. Apr. 4, 2019) (dismissing Florida Deceptive and Unfair Trade Practices Act and other claims to the extent based on a product defect that journalists had reported before the plaintiff's purchase). Thus, they cannot meet the requirements of superior *and* exclusive knowledge articulated by this Court and fail to allege any duty to disclose defects in component parts independent from the rear subframe.

## III. Plaintiffs New, Clay, and Hines Have Not Adequately Pled a Cognizable Injury as Required to Assert Claims Under Georgia Law.

Georgia law is clear: claims for breach of implied warranty and claims under the Georgia Fair Business Practices Act ("GFBPA") and the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") require more than speculative risk or abstract concern; they require a cognizable injury. *See, e.g.*, *Beeney v. FCA US LLC*, 2023 WL 6962116, at *6–7 (D. Del. Oct. 20, 2023) (applying Georgia law); *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1291–92 (S.D. Ga. 2010). Plaintiffs New's, Clay's, and Hines's allegations fail to pass muster. Indeed, the SAC is devoid of facts showing any actual defect manifestation, malfunction, diminished performance, out-of-pocket repair, or other concrete harm to them.

The Opposition erroneously conflates the requirements of standing with the requirements to adequately state a claim for relief under Georgia law. *See, e.g.*,

Opp. at 3. That plaintiffs have alleged injury in fact for Article III standing says nothing about whether they have pled the type of cognizable injury required for the claims at issue. An allegation that clears the minimal threshold for standing does not necessarily establish the concrete, realized harm required to state Georgia claims. As the Supreme Court has made plain, an "injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiffs ignore this divide and cannot litigate around it.

Here, an allegation of excessive corrosion (rising to the level of injury under Georgia law) in the vehicles' rear subframe or component parts must be pled. But the Opposition cites no observation, no repair, or any other facts showing *any* amount of corrosion, let alone corrosion rising to the level of injury required by Georgia. The Opposition merely alleges an asserted risk divorced from real-world impact. Plaintiffs do not—and cannot—point to any factual allegations that nudge their Georgia-law claims across the line from possible to plausible as they must. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Again, none of these plaintiffs alleged corrosion of their rear subframe (or any other part) through an actual defect manifestation, malfunction, repair, or other event or observation because it would not reflect their experience. SAC ¶¶ 50–70. Thus, they fail to state a claim. *See Brooks v. Westlake Portfolio Mgmt.*, 2025 WL 2743882, at *3 (N.D. Ga. June 12,

2025) ("The Complaint also fails to specify how defendant caused any injury to her. Therefore, plaintiff's GFBPA claim should be dismissed.").

Plaintiffs' argument that they have pled injury under the GFBPA through overpayment for their vehicles fares no better. Opp. at 19–20. Plaintiffs New, Clay, and Hines got exactly what they paid for—vehicles that have served their ordinary purpose of providing transportation without any alleged issue. Plaintiffs point to nothing other than a boilerplate conclusory assertion that they "would not have bought [his or her] Class Vehicle or would have paid less for it." SAC ¶¶ 55, 62, 68. Plaintiffs rely on *Nalley v. General Motors, LLC* in making this argument; however, the plaintiffs in *Nalley* went a step further than this conclusory assertion. The *Nalley* plaintiffs alleged that they undertook significant research prior to purchasing their vehicles—allegations that the Georgia plaintiffs in this case did *not* make. 2022 WL 18459646, at *5 (N.D. Ga. Aug. 30, 2022).

Again, plaintiffs New's, Clay's, and Hines's "injuries" are nonexistent and speculative at best, and this Court should not accept plaintiffs' conclusory and boilerplate assertions. *See Iqbal*, 556 U.S. at 664. Because plaintiffs have not provided factual allegations of any manifestation of a defect or any ensuing, concrete injury, their claims are fatally deficient. Georgia law demands factual allegations of cognizable injury and damages. *See Moore-Davis Motors v. Joyner*, 252 Ga. App. 617, 619 (2001) ("We have consistently held that in accordance with

the statutory requirements of the FBPA, the measure of damages to be applied for an FBPA violation is that of 'actual injury suffered.' "). Plaintiffs offer no such allegations. The Court should therefore dismiss Counts 12 through 14 for failure to allege facts showing the type of injury required to assert each cause of action.

Nor have the Georgia plaintiffs pled a claim for injunctive relief under the GFBPA or the GUDTPA. The cases cited by the Opposition do not help them. In *Rose v. Ferrari*, the court found that the plaintiffs sufficiently pled injunctive relief because there was no adequate remedy for the brake failure that plaintiffs experienced and, similarly, in *General Motors Air Conditioning*, the court held that even with repairs to the air conditioner defect, there was still a risk the defect could re-occur. Opp. at 21–22 (citing *Rose v. Ferrari N. Am., Inc.*, 2024 WL 1209185, at *7 (D.N.J. Mar. 20, 2024); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 645 (E.D. Mich. 2019)). Here, plaintiffs have not alleged they experienced any issues with their vehicles or that they sought any repairs that did not address the defect. *See* SAC ¶¶ 50–70. Thus, no likelihood of future injury has been pled. *Bauser v. Porsche Cars N.A., Inc.*, 2024 WL 2406884, at *19 (N.D. Ga. Mar. 25, 2024) (dismissing claims for injunctive relief where "[p]laintiff has not actually experienced the issue of the [alleged defect]").

Even assuming, *arguendo*, that plaintiffs' vehicles manifest a defect in the future, the Georgia plaintiffs received notice via documents accompanying their

vehicles that the vehicles should undergo routine maintenance—allowing them to mitigate any risk of harm through routine inspections and maintenance before the corrosion reaches a critical level. *See Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *16 (N.D. Ga. Mar. 23, 2016) ("Even if [plaintiffs] alleged some future harm, [defendant]'s misrepresentations or omissions would not have caused those future harms to [plaintiff] or any class member.").

Because plaintiffs have not pled facts showing that they would suffer future harm absent injunctive relief, the GFBPA and GUDTPA claims should also be dismissed on this basis. *Jaramillo v. Taurus Int'l Mfg., Inc.*, 2024 WL 5305081, at *5 (M.D. Ga. Sep. 27, 2024) (dismissing GUDTPA claim where plaintiff did not allege he would be damaged in the future, and "[e]ven assuming that such a harm 'will likely occur in the future,' it would be 'the result of a previous alleged deceptive trade practice' as [plaintiff] has already purchased the [product].").

## IV. Plaintiff Harris Has Not Adequately Pled an Exception to Privity Under Florida's Implied Warranty Law.

Despite the split among Florida courts as to whether a third-party beneficiary exception to implied warranty exists, even if the exception exists, plaintiffs here have not adequately pled they fall within the exception.

First, the Opposition concedes that cases such as *Valiente* explicitly state that there is no third-party beneficiary exception in Florida, and the argument that *Valiente* should not be applied to motor vehicles is unpersuasive. *See* Opp. at 24–

25 n.12 (citing *Valiente v. Unilever U.S., Inc.*, 2022 WL 18587887 (S.D. Fla. Dec. 8, 2022)). *Valiente* reached its conclusion that there is no third-party beneficiary exception to Florida's implied warranty law by analyzing several vehicle cases, including *Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173 (S.D. Fla. 2019), a case the Opposition relies on. *See Valiente*, 2022 WL 18587887, at *13–14.

Even assuming there is a third-party beneficiary exception, the SAC does not adequately plead that plaintiff Harris falls within this exception. *Shelor* is instructive. There, the court found that despite the plaintiffs having purchased their vehicles from authorized Jaguar and Land Rover dealers and arguing that they were in privity with Jaguar through a third-party beneficiary exception, the exception did not apply because "[t]he pleading includes no allegations to support that the implied warranty extended to a third-party beneficiary[.]" *Shelor v. Jaguar Land Rover N.A. LLC*, 2025 WL 1580834, at *28 (M.D. Fla. Jan. 31, 2025). The *Shelor* plaintiffs "repeatedly allege[d] that they are third-party beneficiaries . . . but the term also is a legal conclusion." *Id.*

This same is true here. At bottom, the SAC relies upon conclusory allegations couched as facts, which this Court should not accept as true. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, even if the Court finds that there is a third-party beneficiary exception, it should follow the well-reasoned decisions that decline to apply the exception. *See, e.g.*,

*Shelor*, 2025 WL 1580834, at *28; *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1326 (S.D. Fla. 2020) ("The Court cannot find any allegations in the Amended Complaint that would satisfy this exception[,]" even assuming it exists). Plaintiff Harris's implied warranty claim must be dismissed.

## CONCLUSION

Since its inception, all parties understood this litigation to be about an alleged defect in plaintiffs' vehicles' rear subframes. In plaintiffs' own words, "allegations regarding corrosion in the SAC are *identical* to those in the complaint filed nearly three years ago[.]" Opp. at 1. For the foregoing reasons, MBUSA and MBG respectfully request that the Court grant their motion to dismiss plaintiffs' Second Amended Consolidated Class Action Complaint with prejudice to the extent that it is based on any alleged defects in component parts independent of the subframe, and dismiss the Georgia claims and the Florida implied warranty claim with prejudice in all respects.

Dated: February 18, 2026

Respectfully submitted,

*/s/ Troy M. Yoshino*

Troy M. Yoshino*
Daniel M. Blouin*
Shawn R. Obi*
**WINSTON & STRAWN LLP**
101 California Street, 21st Floor
San Francisco, CA 94111
Tel.: (415) 591-1000

TYoshino@winston.com
DBlouin@winston.com
SObi@winston.com
*admitted *pro hac vice*

*<u>/s/ S. Wade Malone</u>*
S. Wade Malone
Georgia Bar No. 468015
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
201 17th St. NW
Atlanta, Georgia 30363
Tel.: 404-322-6000
Fax: 404-322-6050
wade.malone@nelsonmullins.com

***Counsel for Defendants Mercedes-Benz USA, LLC and Mercedes-Benz Group AG***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Troy M. Yoshino*
Troy M. Yoshino

**CERTIFICATE OF COMPLIANCE**

The foregoing complies with Local Rule 5.1 and was prepared using a 14-point Times New Roman font.

*/s/ Troy M. Yoshino*
Troy M. Yoshino